454 So.2d 1220 (1984)
STATE of Louisiana, Appellee,
v.
Harold James JACKSON, Appellant.
No. 16206-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1984.
Rehearing Denied September 21, 1984.
Donald R. Minor, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., John A. Broadwell, Asst. Dist. Atty., Shreveport, for appellee.
Before PRICE, MARVIN and NORRIS, JJ.
PRICE, Judge.
Harold James Jackson has appealed his conviction after trial by jury of simple robbery. He was sentenced as a multiple offender to twenty years at hard labor.
Only one of the assignments of error was briefed to this court; therefore, the remaining assignments are considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982). The viable assignment before us on this appeal is defendant's contention that the evidence was insufficient to support his conviction.
FACTS:
Don Butts, the victim, testified to the following account of how he was allegedly robbed of approximately $165 by defendant on January 9, 1983. Butts was shopping at a Bestyet store on the Greenwood Road on this Sunday morning about 8:00 a.m. Defendant approached him once while he was shopping and asked if he didn't know him. Later, at the check out counter, defendant was in line behind Butts and he initiated a similar conversation. At the time Butts paid for his purchases he exhibited a roll of money totaling about $165. As Butts was placing his grocery purchases in his truck in the parking lot, defendant again approached him and asked for assistance. He represented that the car he was driving, a white four-door Fiat, was having transmission trouble and he needed a ride to obtain fluid and tools to repair the car.
*1221 After taking his purchases home, Butts returned to the parking lot to assist defendant. He was requested to carry defendant to the nearby Ramada Inn where defendant represented his cousin was staying who would loan him the tools necessary for the repairs. At some point during this time defendant suggested he could sell Butts a T.V. and a shotgun for a bargain price of $75 each. After some discussion of this proposition defendant turned down the proposal.
Defendant requested Butts to drive to the rear of the motel to a certain area so that he could load the tools he proposed to borrow. Defendant went into the motel and shortly returned and stood at the driver's side of the truck and asked Butts, who was seated in the truck, for a dollar which he claimed to need in connection with the borrowing of the tools. Butts took the folded wad of bills from his pocket in preparation to giving defendant the dollar. Defendant leaned in and placed his arm on Butts shoulder and stated "give it up" or "give it all." Butts started to reply "no, you don't want to do that," and defendant wrested the wad of money from Butts hand and ran.
Butts gave chase but was unable to catch sight of defendant. He then returned home and changed vehicles and drove around the area looking for defendant's vehicle. About an hour after the incident he sighted a police car and reported the matter to the police.
A description of the defendant and the car he was driving was broadcast over the police radio and the next morning another officer who had stopped defendant for running a stop sign, recognized that defendant fit the description. The officer accompanied defendant to his sister's home to allow him to procure his driver's license. While the officer waited in the front of the residence defendant absconded through the rear of the house and eluded the officer.
A week later a photographic lineup was shown to the victim, Butts, who identified defendant. A warrant was issued on the complaint of Butts charging defendant with armed robbery and he was arrested on February 8, 1983. The charge was later amended to simple robbery as the victim was not certain defendant had a weapon.
ASSIGNMENT OF ERROR NO. 2:
In his only assignment of error briefed to this court, defendant contends the evidence was insufficient to prove beyond a reasonable doubt that he committed the crime charged on the date in question. Alternatively, he contends that in any event the state failed to prove beyond a reasonable doubt an essential element of the crime of simple robbery and at most only proved a theft occurred which is not responsive to the simple robbery charge. Defendant contends that the evidence showing the money was grabbed from the victims hand does not satisfy an essential element of the crime of simple robbery, that is, "use of force or intimidation." In support of this position, defendant points to the victim's responses on cross-examination which he contends indicate the victim was not intimidated and no force was used in the incident. While the victim did testify under cross-examination that he had not been afraid of defendant or intimidated by him, his testimony on direct examination indicates that the money was taken by some degree of force. Butts described the defendant's actions in taking the money as follows:
Q. Waswhat did Mr. Jackson do when you pulled your money out of your pocket?
A. That's when he hit my shoulder like that. Said give it up or give it all or something and I was in the process of doing this and I said, no, you don't want to do this. And about that time he grabbed the money and was gone. You know, I was at the stage where I was just more or less kidding him because I never took him serious. You know what I mean.
Q. When he took the money, what did he take the money with?
A. He just grabbed the money with his hand.

*1222 Q. And what did he do when he grabbed the money?
A. When he done thatwhen he grabbed the money like this, I was fighting with his hand and he took off running and that's when I tried to get out and chase him. He got away.
The state contends that the victim's testimony that he did not hand the money over to defendant, that he did not give it up voluntarily, and that defendant snatched it from his hands establishes the force or intimidation element of the offense. Furthermore, the state contends that the instant offense was accomplished upon the person of a victim who was fully cognizant of the events taking place and therefore the situation involved an increased danger to human life such that lesser degrees of theft would not be comparable.
At the time of this offense, the simple robbery statute, La.R.S. Art. 14:65, provided as follows:
Simple robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon.
Whoever commits the crime of simple robbery shall be fined not more than three thousand dollars, imprisoned with or without hard labor for not more than seven years, or both.
The use of force or intimidation is an element of the offense of simple robbery as defined in this statute. Louisiana Courts have determined that the legislative purpose in prohibiting this offense was to recognize the increased risk of danger to human life posed when a theft was carried out in the face of the victim's opposition and to provide a penalty which would reflect the severity of this grade of theft. See State v. Mason, 403 So.2d 701 (La. 1981) and State v. Johnson, 411 So.2d 439 (La.1982). Based on this finding of legislative purpose, the Louisiana Supreme Court held that the taking of a purse dropped by a woman fighting the perpetrator who was attempting to rob another woman was "theft ... by use of force or intimidation" such as to constitute a simple robbery as defined in La.R.S. Art. 14:65. State v. Johnson, supra.
Neither the crimes of theft nor purse snatching are responsive verdicts as listed in C.Cr.P. Art. 814 to a charged offense of simple robbery. The crime of purse snatching is defined in La.R.S. Art. 14:65.1 as "the theft of anything of value contained within a purse or wallet at the time of the theft, from the person of another or which is in the immediate control of another, by use of force, intimidation, or by snatching, but not armed with a dangerous weapon." Cases involving the crime of purse snatching have distinguished the term "snatching" from the legal definition of "the use of force or intimidation". These cases hold "`snatching' does not require a face-to-face confrontation and is distinguished from use of force and intimidation by the statute's very wording." State v. Anderson, 418 So.2d 551 (La.1982); State v. Jackson, 439 So.2d 616 (La.App. 1st Cir.1983).
Because the instant case did involve a face-to-face confrontation where the defendant grabbed the victim's money from his hand after the victim refused to give up the money, the circumstances establish that the taking was by force rather than a mere snatching as defined in State v. Anderson, supra. Therefore we find the evidence to satisfy the element of force or intimidation essential to the crime of simple robbery.
Next we will address the defendant's claim that the evidence failed to establish that he committed any crime on the date in question. The defendant testified that he was framed by the victim because of an incident which occurred on January 8, 1983. According to his testimony, the following events took place on the Saturday before the alleged robbery. Don Butts approached defendant and another man named Peter who were sitting in the defendant's sister's car. Butts appeared to know Peter whom he questioned about *1223 some pills. Peter left with Butts after declaring that he knew where he could obtain TVs and shotguns. A short time later, Butts returned to the defendant who was still sitting in the white Fiat. Butts demanded to know where Peter was, and when the defendant refused to give any information, Butts threatened to make a complaint to the police that the defendant had committed an armed robbery against him.
The defendant further testified that on Sunday, January 9, 1983, he could not have committed the alleged robbery because he was en route to Monroe, Louisiana with his sister and niece to visit his nephew who was incarcerated at LTI. The defense presented eight witnesses to corroborate this alibi. The testimony establishing the defendant's presence at LTI on the date of the robbery includes various estimates by the defense witnesses of the time of the defendant's arrival in Monroe and specifically at the institute. These various estimated times do not all coincide, ranging from 9:30 a.m. to 11:45 a.m.
The state offered rebuttal testimony from the assistant principal at the training institute who testified that the defendant's sister signed her son out for visitation after 12:00 on January 9, 1983. Because of this evidence, the fact of the defendant's presence at LTI after noon on January 9th, would not preclude the possibility that the defendant committed the instant offense at approximately 9:00 a.m. on the same day. The jury obviously found the assistant principal's testimony more credible than that of the defense witnesses and did not find the defendant's testimony that the victim had attempted to frame him as credible as the victim's testimony depicting the incident. Such a credibility call by the factfinder should not be disturbed on appeal. See State v. Husband, 437 So.2d 269 (La.1983); State v. Tompkins, 403 So.2d 644 (La. 1981); State v. Alford, 384 So.2d 761 (La. 1980).
The sufficiency of the evidence in this case satisfies due process standards since the record evidence, viewed in the light most favorable to the prosecution, is sufficient for a rational juror (factfinder) to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore the defendant's conviction and sentence are affirmed.
AFFIRMED.