403 So.2d 701 (1981)
STATE of Louisiana
v.
Johnny B. MASON.
No. 81-KA-0190.
Supreme Court of Louisiana.
September 8, 1981.
*702 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James M. Johnson, Asst. Dist. Atty., for plaintiff-appellee.
Charles E. McConnell, Springhill, Indigent Defender Board, for defendant-appellant.
LABORDE, Justice ad hoc.[*]
Defendant Johnny Mason was charged in a two-count bill of information with armed robbery and aggravated burglary, violations of LSA-R.S. 14:64 and 14:60, respectively. Following trial before a twelve-member jury, defendant was convicted of simple robbery and aggravated burglary, and sentenced to consecutive terms of five and ten years imprisonment at hard labor. In his sole contention of error on appeal, defendant reurges his previously filed motion for new trial, claiming that the state's evidence failed to demonstrate, beyond a reasonable doubt: (1) his identity as the victim's assailant, and (2) his theft of property which was in the victim's immediate control. Defendant phrases this contention in terms of the recently adopted Jackson standard of review. Under this standard, a convicted appellant's attack upon the sufficiency of the state's evidence to prove his guilt is judged by determining whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Morgan, 389 So.2d 364 (La.1980); State v. Harveston, 389 So.2d 63 (La.1980); State v. Byrd, 385 So.2d 248 (La.1980).
Evidence adduced at trial revealed the following. During the early morning hours of May 12, 1980, Alice Kennon sat in the living room of her Minden, Louisiana home entertaining her son Elmer, who lived in an adjacent apartment, and a neighbor. Shortly after midnight, the neighbor left and Elmer returned to his next door apartment. Mrs. Kennon called to her departing son, asking if he wanted a glass of juice before going to bed. Elmer responded affirmatively and Mrs. Kennon then proceeded into his apartment with a container of juice in her hand. Upon returning to her apartment, Mrs. Kennon started toward the kitchen to lock it up, passing through her darkened bedroom on the way. As she did so, an unknown assailant threw a piece of cloth over her face and pushed her onto the bed. Mrs. Kennon's screams alerted Elmer, who entered the apartment and grabbed the attacker from behind. Following a brief struggle, the assailant eluded Elmer, snatching Mrs. Kennon's purse as he fled from the residence.
Investigating officers of the Minden City Police Department obtained the alleged assailant's nickname from the Kennons and arrested the defendant later that evening. In addition, the officers recovered a ban-lon T-shirt and a ¾" copper pipe which the attacker apparently left on Mrs. Kennon's dresser. A subsequent search of the accused's residence revealed complementary *703 segments of pipe leading to a disconnected kitchen stove. Coupled with Mrs. Kennon's in-court identification of the accused as her assailant, as well as her and Elmer's lineup identifications, this evidence formed the heart of the prosecutor's case against defendant.
At trial, the defense sought to undermine Mrs. Kennon's credibility through the use of inconsistent statements made to its investigator, Don Huffty, approximately one week earlier. According to Huffty, Mrs. Kennon had stated that she was unable to see her assailant "because there was not sufficient light in the room," and that her identification of defendant came only after "someone had told her that they thought it was `Bumblebee' Mason that was in the house."
For her part, Mrs. Kennon conceded that she had never previously known the accused and that her bedroom was dark at the time of the offense. During rebuttal she clarified the representations made earlier to Mr. Huffty, stating that she saw the defendant "when my son snatched him away from this little nook and at the foot of the bed where the light glared from the living room and from the kitchen." Vehemently denying the allegation that she had named the defendant only after others had suggested his involvement, Mrs. Kennon was unhesitating in her identification of defendant:
"Q. Can you identify the person who did it?
A. There.
Q. Where is he?
A. There he sits right there. I'd know him anywhere I seen him.
Q. It that him seated over there?
A. Without a doubt.
* * * * * *
Q. You knew it was him by name?
A. I didn't know his name. I know him by that profile.
Q. What profile?
A. The way he looks, his face, features."
The defense also assailed the assertion that the piece of pipe found on Mrs. Kennon's dresser had come from the accused's residence. In this regard, Doy B. Miller, a licensed plumber who had practiced his trade for over forty years and who qualified as an expert witness, testified that there was no way that the stove in the Mason home could have been tied into the pipe found in the Kennon home without bending the copper pipe on the stove, and that the copper pipe had not been bent. Furthermore, Bill Gene Specks, the owner of the house where defendant resided, testified that the stove had been disconnected prior to defendant's lease of the residence and that he had never seen the piece of pipe identified by the officers.
All other testimony concerning this pipe appeared clearly adverse to the defense. In searching defendant's home, Webster Parish Deputy Jimmy Batton observed that a "cook stove" located in the kitchen had been disconnected and the gas supply pipe coming out of the floor had been recently capped. Batton compared the diameter of the gas supply pipe with that of the pipe found in the Kennon home and concluded that the two pipes would fit together if the cap were removed from the supply line. Checking the connections at the stove itself, Batton discovered a female coupling which would fit the other end of the pipe left by Mrs. Kennon's assailant. The witness then demonstrated that this variety of pipe could easily be curved without using any tools and without leaving any kinks in the metal. Testimony by Minden City Police Officer Jack Tucker coincided with that of Batton, and even defense witness Doy Miller conceded that the pipe introduced by the prosecution could have been employed in connecting the stove, though not directly.
Plainly, this evidence was sufficient to establish the accused's identity as Mrs. Kennon's assailant beyond a reasonable doubt. Jackson v. Virginia, supra.
Counsel's further contention that the snatching of Mrs. Kennon's purse constituted only a theft poses a more interesting question. Noting that defendant was in full flight when he took the purse, defense counsel argues that the purse was not within *704 Mrs. Kennon's immediate control, and that, in any event, concurrence of the intimidating conduct and the requisite intent to effect a theft thereby is necessary in order to convict an accused of robbery. In the instant case, defendant contends that the incidental taking of property from a residence following an aborted rape attempt is not robbery, but rather theft.
La.R.S. 14:65 defines the offense of simple robbery as follows:
"Simple robbery is the theft of anything of value from the person of another or which is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon."
By providing a more severe grade of theft for those instances in which a thief uses force or intimidation to accomplish his goals, the legislature apparently sought to emphasize the increased risk of danger to human life posed when a theft is carried out in face of the victim's opposition. Because the possibility of such a violent confrontation may exist in situations other than those where property is taken directly from the person of another, it has been recognized that it is sufficient for robbery that the property taken be sufficiently under the victim's control, such that, had the victim not been subjected to violence or intimidation by the robber, he could have prevented the taking. State v. Refuge, 300 So.2d 489 (La.1974); State v. Verret, 174 La. 1059, 142 So. 688 (1932); LaFave & Scott, Criminal law (Hornbook ed. 1972), § 94, p. 696. In addition, most jurisdictions have not required that the defendant's acts of violence or intimidation be done for the very purpose of taking the victim's property; rather, it is enough that he takes advantage of a situation which resulted from the prior use of force or intimidation. LaFave & Scott, supra, p. 702; State v. Covington, 169 La. 939, 126 So. 431 (1930).
In the case at bar, the accused pushed Mrs. Kennon onto her bed and started to "pull up her clothes", clearly suggesting that his intentions, at least initially, were not directed toward robbing the victim. Mrs. Kennon attempted to ward off the defendant until her son arrived and grabbed him from behind, thereby prompting the accused to flee, purse in hand. Though no testimony was ever adduced as to the precise location of Mrs. Kennon's purse in the residence, the evidence clearly suggested that the theft had been accomplished only as a result of the defendant's prior acts of aggression toward Mrs. Kennon. Under the aforementioned jurisprudence, this evidence was sufficient to permit the accused's conviction of simple robbery.
For the above and foregoing reasons, the conviction and sentence are affirmed.
NOTES
[*] Judges J. Burton Foret, Jimmy M. Stoker and P. J. Laborde, Jr. of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and associate justices Marcus, Blanche and Watson.