900 So.2d 929 (2005)
STATE of Louisiana
v.
Aaron J. DIXON.
No. 04-KA-1019.
Court of Appeal of Louisiana, Fifth Circuit.
March 15, 2005.
*930 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Shannon H. Huber, Walter Amstutz, Frank Brindisi, Assistant District Attorneys, Gretna, Louisiana, for Plaintiff/Appellee.
*931 Bruce G. Whittaker, New Orleans, Louisiana, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, MARION F. EDWARDS, and SUSAN M. CHEHARDY.
SOL GOTHARD, Judge.
Defendant, Aaron Dixon, appeals his convictions and sentences on three criminal charges. For reasons that follow, we affirm.
Defendant was indicted by a Jefferson Parish grand jury for aggravated rape, second degree kidnapping, and simple robbery, violations of La. R.S. 14:42, 14:44.1, and 14:65. Defendant pled not guilty at arraignment. Defendant filed a motion to appoint a sanity commission. On February 24, 2003, the State and defendant stipulated to the report that defendant was competent to stand trial. On March 19, 2003, the trial judge denied defendant's motions to suppress.
Trial commenced on January 27, 2004 before a twelve-person jury, which found defendant guilty as charged on January 29, 2004. On February 13, 2004, the trial judge denied defendant's motion for a post-verdict judgment of acquittal and for a new trial. After defendant waived sentencing delays, the trial judge sentenced defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for aggravated rape; forty years at hard labor without benefit of parole, probation, or suspension of sentence for second degree kidnapping; and seven years at hard labor for simple robbery, to be served consecutively with each other.
The State filed a multiple offender bill of information alleging defendant to be a second felony offender based on a prior guilty plea to carnal knowledge of a juvenile in 1994. Defendant denied the allegations therein and moved to quash the bill, which the trial judge denied. After a multiple offender hearing on April 26, 2004, the trial judge found defendant to be a second felony offender, vacated the sentence on the second degree kidnapping, and imposed a sentence of sixty years at hard labor to be served consecutively with the other sentences. This appeal follows.[1]

FACTS
On October 28, 2002, defendant raped T.S.[2], who had just moved to Louisiana from Arizona to attend Tulane University after graduating high school.
T.S. testified that she first met defendant while waiting for the Jackson Avenue ferry that evening at approximately 7:00 p.m. Because T.S. had left her cell phone on a bus two days earlier, she had arranged to meet the bus driver, Willie Valentine, near his residence in Marrero.[3] To that end, T.S. took the street car on St. Charles Avenue to Jackson Avenue and walked to the ferry terminal. While waiting for the ferry, T.S. saw defendant lying on a bench. He approached her, told her his name, and struck up a conversation. She testified that she felt uncomfortable with defendant, since he was a complete stranger and it was dark out. Sensing *932 her discomfort, defendant told T.S. that she evidently did not want to talk to him because he was black. T.S. continued conversing with defendant because she felt guilty, since defendant had essentially called her a racist. After boarding the ferry, defendant followed her upstairs and continued talking to her. T.S. told defendant she was from Arizona and related where she was going. Defendant said that he would show her to the bus stop, since she was unfamiliar with the area. T.S. considered telling defendant that she could find the bus stop herself, but felt that defendant would not have accepted her answer. Further, she felt that telling defendant to leave her alone would have been rude, especially after his earlier comment about the reason she did not want to talk to him.
After disembarking the ferry, T.S. was ahead of defendant, but he caught up with her on the stairs. He insisted on showing her to the bus stop. Again, not wishing to be rude, T.S. agreed to allow him to lead her to the bus stop. T.S. testified that she did not notice the bus stop at the foot of the stairs at the ferry landing when she disembarked in Gretna. And, defendant did not point out that bus stop to her. Rather, she accompanied defendant on Huey P. Long in the direction of the Westbank Expressway. When they reached Fourth Street, she asked defendant where he was taking her. Defendant replied that he was taking her to the bus stop. When defendant turned on Twelfth Street, T.S. noticed that it was a dead end. At that point, T.S. knew something was wrong. When she hesitated, defendant told her to go down the alleyway beside a house because he had something to show her. T.S. refused to go and began to run. Defendant grabbed her and began to choke her. He dragged her down the street by her neck with such force that her shoes came off. She stumbled and defendant told her to get up. T.S. could not keep up with defendant, and continued to stumble. She could not walk because she could not breathe with defendant choking her.
Defendant continued to drag her until they reached a house. He removed his arm from her neck when they were in the kitchen, but made her enter a bedroom in the house. Defendant made her sit on the bed and told her to take off her clothes. She tried to argue with him, but she was afraid he would try to kill her. T.S. said that she could not flee because defendant was standing right in front of her. After she disrobed, defendant forced her down on the bed and raped her vaginally. Afterwards, he forced her "to have oral sex with him on top of [her]" on the floor. Then, defendant raped her anally. After that, defendant told her to perform oral sex on him. When T.S. began vomiting, defendant handed her a cup and told her to "puke in that."
T.S. repeatedly begged defendant to stop to no avail. According to T.S., defendant asked her why was she protesting, since "this is what [she] wanted." T.S. said that defendant acted as if the encounter was a "date." As a ruse to escape, T.S. attempted to gain his trust by acting less like a victim. She told him that she was hurting and that she was tired and needed to leave. Defendant told her to lie down and sleep if she was tired. T.S. pretended to sleep, wondering whether defendant would kill her as she lay there. At some point, defendant told her she could leave and she began to dress. As defendant dressed, he repeatedly asked her to stay the night. He led her to the bathroom, asked her how she was getting home, and if she had money. She replied that she had a $20 bill and asked defendant if he wanted it. Defendant initially said for her to keep it. However, as he led her outside, defendant said he changed his mind *933 and that he did want the money. T.S. said she felt very intimidated, and thought that he was taking her somewhere to kill her. Defendant asked her how she was getting home, and she replied she would call her mother. He told her he knew she was lying, and T.S. knew she had to get away. When she turned toward the Westbank Expressway, defendant did not follow. T.S. went across the Expressway to a Shell Station where the police were called.
Officers Corey Newby and Bill Johnson of the Gretna Police Department responded to the Shell Station at 1400 Lafayette Street. According to Officer Newby, he was dispatched at approximately 10:20 p.m. T.S. told Officer Newby that she had been raped and provided a name and description of the rapist. Officer Newby broadcast this information over the police radio and notified ranking officers. Officer Newby left to prepare a photographic lineup.
Officer Johnson left shortly after 11:00 p.m. to look for the suspect. He observed a man at the intersection of Fifth Street and Stumpf Boulevard that fit the description. He stopped the man, who identified himself as Aaron Dixon. Meanwhile, Detective Dana Parker had shown T.S. the photographic lineup, and T.S. had positively identified defendant at 11:35 p.m. Officer Johnson was notified of the positive identification, and he arrested defendant.
Early the following morning, T.S. was examined by Dr. Martha Brewer, who was accepted as an expert in rape examinations. Dr. Brewer began the examination at 1:15 a.m. and the exam concluded nearly two hours later. T.S. related what had happened to her and told Dr. Brewer that the perpetrator had ejaculated. During the examination, Dr. Brewer noted abrasions on the victim's back, which were consistent with being dragged across the ground. T.S. had abrasions on both knees, both sides of her abdomen, multiple abrasions on her chin, a "severe" abrasion on her left elbow and a "milder" abrasion on her right elbow. According to Dr. Brewer, the injuries appeared to have occurred within the past few hours.
The pelvic examination revealed abrasions on the victim's outer genitalia, known as the vulva. There were abrasions on the opening of the vagina. Dr. Brewer noted an abrasion deep inside the vagina where the vagina meets the cervix. According to Dr. Brewer, fecal matter was smeared around the anus and outside of the vagina, suggesting that the victim was anally raped. Dr. Brewer took cultures to test for diseases and swabbed for DNA. T.S. told Dr. Brewer that she was menstruating at the time, which was confirmed during the pelvic examination. At trial, Dr. Brewer identified photographs of some of the victim's abrasions.
Bonnie Dubourg, the State's DNA expert, testified that defendant was a "possible donor" for the sperm cell fraction of the victim's vaginal swab. Ms. Dubourg testified that she would expect one person in every 2000 to be a part of the mixture. She explained that the results were due to the low level of the DNA in the mixture.
After executing a search warrant on the house on Twelfth Street, Detective Ronald Still seized several items, including an RTA bus ticket in the bathroom, which T.S. identified as her bus ticket that she dropped and a hair tie, which T.S. identified as belonging to her. While collecting two quilts and a blanket, Detective Still observed that the sheets on the bed appeared to have blood on them.[4]
After waiving his constitutional rights, defendant told Detective Parker that he *934 and T.S. met on the ferry and had consensual vaginal sex at an abandoned house.[5] Defendant admitted that he ejaculated inside her without wearing a condom. Defendant said that T.S. gave him $20 after he asked her if she had any money.

ASSIGNMENTS OF ERROR
In his first assignment of error, defendant argues that the evidence on the issue of force was insufficient to support the verdict of guilty of aggravated rape.
Defendant contends that the evidence is insufficient to support his aggravated rape conviction because State failed to prove the requisite degree of force. Specifically, defendant contends that the evidence did not show the victim resisted to the utmost, was prevented from resisting by force or threats of physical violence, or that defendant was armed. According to defendant, this Court should enter a verdict of forcible rape. The State responds that the evidence was sufficient to support the aggravated rape conviction.
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
Aggravated rape is defined in La. R.S. 14:42, in pertinent part, as follows:
A. Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) When the victim resists the act to the utmost, but whose resistance is overcome by force.
(2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution.
(3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon.
. . . .
Under La. R.S. 14:42.1 A(1), forcible rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of the victim because it is committed "[w]hen the victim is prevented from resisting the act by force or threats of physical violence under circumstances where the victim reasonably believes that such resistance would not prevent the rape."
The difference between aggravated rape and forcible rape is the "degree of force employed and the extent to which the victim resists." State v. Parish, 405 So.2d 1080, 1087 (La.1981), on rehearing; Accord, State v. Puckett, 02-997 (La.App. 5 Cir. 1/28/03), 839 So.2d 226, 231, writ denied, 03-0891 (La.12/12/03), 860 So.2d 1148. A greater degree of force is necessary to justify the more serious punishment imposed for aggravated rape. State v. Jackson, 437 So.2d 855, 858 (La.1983). The degree of force employed and the determination of the grade of rape is for the jury to decide. State v. Cepriano, 00-213 (La.App. 5 Cir. 8/29/00), 767 So.2d 893, 899.
*935 In State v. Puckett, supra, this Court held that the evidence supported the jury's determination that the amount of force employed constituted aggravated, rather than forcible rape. In Puckett, defendant forced his way into the victim's home when she opened the door, grabbed her and repeatedly punched her in the head. He forced her to perform oral sex on him and vaginally raped her. She suffered a torn toenail and an abrasion on the inside of her foot. This Court found that the jury concluded either
that the evidence proved that the victim resisted to her utmost and was overcome by force or was prevented from resisting by defendant's acts of physical abuse immediately before the rape which were tantamount to threats of great bodily harm accompanied by apparent power of execution.
Id. at 231-232.
In State v. Henderson, 566 So.2d 1098 (La.App. 2 Cir.1990), the court found the evidence supported defendant's aggravated rape conviction. In Henderson, the defendant grabbed the victim, forced her into her house, and forced her to the floor. She struggled, but was unable to break loose. He held her down, removed her clothes, and raped her twice. Defendant told her to stay out of the light. The victim offered to turn off the lamp, hoping that she could get away long enough to reach some mace she had hidden near the lamp. Defendant subsequently fled after the victim sprayed him with mace. State v. Henderson, 566 So.2d at 1100-1101.
The Henderson court noted that the victim admitted that she gave up struggling twice, once when defendant overpowered her the first time. The second time was when she gave up struggling as part of a ruse to escape, which "may well have saved her life, and does not deprecate his degree of force." Henderson, at 1105. The court further found that the "fact that she momentarily gave up the fight as a defensive (and successful) ploy does not mean she failed to put up the utmost resistance and should not inure to his benefit." Id. at 1105. Thus, the court held that a rational trier of fact could have concluded that State proved beyond reasonable doubt that defendant exerted great force and overcame victim's utmost resistance. Id.
In support of his argument, defendant asserts in his brief that the "victim admitted to having put up no resistance whatsoever." Presumably, defendant reached this conclusion based on isolated remarks in the victim's cross-examination testimony. The record reflects that the victim was asked on cross-examination whether she put up a fight not to sit on the bed. The victim answered that she was afraid to fight back physically because she thought he would kill her. Additionally, the victim stated that she did not physically resist because the defendant was stronger than she was.
Taken in its entirety, it appears that the victim's testimony, combined with the physical evidence, supports the jury's decision that this was an aggravated, not a forcible rape. The record reflects that defendant brutally raped T.S. after choking her and dragging her with such force that she was literally yanked out of her shoes. The degree of force exerted upon the victim is clearly evidenced by the injuries she sustained as a result of the attack, including abrasions to her neck, face, back, abdomen, knees and elbows. She sustained abrasions on her external genitalia, as well as an abrasion deep inside her vagina, and fecal matter was smeared around her anus and vagina.
The victim's testimony and the physical evidence reflect the extent of the victim's *936 resistance. T.S. testified that she tried to run and yelled when he grabbed her on Twelfth Street. However, defendant choked her and dragged her into the house. T.S.'s resistance is further evidenced by the scratches on defendant's torso, that Detective Parker acknowledged appeared to be "red" and "fresh."
The jury had before it the responsive verdict of forcible rape, but determined the amount of force employed and resistance exerted amounted to aggravated rape. The jury's careful consideration of the verdict is evidenced by the fact that the jury requested a second reading of the definitions of aggravated and forcible rape before returning a unanimous verdict of guilty of aggravated rape.
As was the case in Puckett, supra, the jury could have concluded that the evidence proved that the victim resisted to her utmost and was overcome by force. The jury could also have concluded that she was prevented from resisting by defendant's acts of physical abuse immediately before the rape which were tantamount to threats of great bodily harm accompanied by apparent power of execution. See, Puckett, supra. Viewed in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that the defendant committed aggravated, rather than forcible rape.
In his second assignment of error, defendant argues that the evidence was insufficient to support the verdict of guilty of simple robbery.
Defendant contends that the evidence is insufficient to support his simple robbery conviction because the State failed to prove the element of force or intimidation. Specifically, defendant argues that the fact that he ultimately accepted the money that T.S. "freely offered to him" did not convert their "transaction into a simple robbery." The State responds that the evidence established that defendant took the money through intimidation.
The critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, supra. In the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Johnson, 00-1552 (La.App. 5 Cir. 3/28/01) 783 So.2d 520, 527, writ denied, 01-1190 (La.3/22/02), 811 So.2d 921. The question of the credibility of the witnesses is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. Id. The credibility of the witnesses will not be re-weighed on appeal. Id.
Simple robbery is defined in La. R.S. 14:65 as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, but not armed with a dangerous weapon." In State v. Mason, 403 So.2d 701 (La. 1981), defendant was convicted of simple robbery after taking the victim's purse from her home on his way out of the house after a rape attempt was interrupted by the victim's son. Defendant argued that the taking of property from a residence following an aborted rape attempt did not constitute robbery. Addressing that argument, the Louisiana Supreme Court stated:
[M]ost jurisdictions have not required that the defendant's acts of violence or intimidation be done for the very purpose of taking the victim's property; *937 rather, it is enough that he takes advantage of a situation which resulted from the prior use of force or intimidation. . . .
Id. at 704 (citations omitted).
The Mason court held that the evidence was sufficient to support the defendant's conviction because the defendant was only able to take the purse because of the prior acts of violence and aggression towards the victim. Id. at 704.
By finding defendant guilty of simple robbery in the present case, the jury evidently concluded that defendant took the money from T.S. through force or intimidation. The record supports the jury's finding. T.S. testified that, "he said give me that money, so I just did it." She characterized his statement as a demand, not a request. T.S. felt intimidated, threatened and afraid, since she believed that he was taking her someplace more convenient to kill her.
Although defendant asserts that the victim freely handed over the $20 bill, the record reflects otherwise. Defendant had brutally sexually assaulted T.S. She was in the house with defendant for nearly three hours.[6] After having just endured the acts inflicted on her by defendant, it is inconceivable that T.S. gave defendant $20 out of her own free will. Rather, as in Mason, the evidence shows that the taking of the money was accomplished only as a result of the prior acts of violence and aggression towards the victim. Thus, viewed under the Jackson standard, there is sufficient evidence to support defendant's simple robbery conviction.
In his third assignment of error, defendant argues that the trial court imposed an excessive sentence.
Defendant asserts that his sentence of life plus sixty-seven years is excessive. The State responds that the record supports the sentences imposed. Additionally, the State points out that the defendant's brief lacks any argument as to why the sentence is excessive.
The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. A sentence is excessive if it is grossly disproportionate to the seriousness of the offense so as to shock our sense of justice, or if it imposes needless and purposeless pain and suffering. State v. Lobato, 603 So.2d 739, 751 (La. 1992); State v. Brown, 01-160 (La.App. 5 Cir. 5/30/01), 788 So.2d 667, 674. The trial judge has wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Thompson, 02-333 (La.4/9/03), 842 So.2d 330, 338.
Aggravated rape is punishable by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 14:42(D)(1). Simple robbery is punishable with a fine of not more than $3,000, imprisonment with or without hard labor for not more than seven years, or both. La. R.S. 14:65(B). Second degree kidnapping is punishable by imprisonment at hard labor for not less than five nor more than forty years, at least two of which shall be without benefit of parole, probation, or suspension of sentence. La. R.S. 14:44.1(C). As a second felony offender with the underlying offense of second degree kidnapping, defendant faced a *938 sentencing range from twenty to eighty years. See, La. R.S. 15:529.1(A)(1)(a); 14:44.1(C).
T.S. testified at the sentencing hearing that defendant nearly destroyed her life. She stated she contracted a sexually transmitted disease that will leave her at risk for cancer for the rest of her life. T.S. told the judge that she was still trying to deal with the ordeal she had suffered, but that she will be able to get on with her life because justice had been served.
When originally sentenced on February 13, 2004, the trial judge imposed a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for aggravated rape; forty years at hard labor without benefit of parole, probation, or suspension of sentence for second degree kidnapping; and seven years at hard labor for simple robbery, with the sentences to be served consecutively. After the multiple bill hearing on April 26, 2004, the trial judge vacated the forty-year sentence and sentenced defendant to sixty years at hard labor to be served consecutively with the other sentences.
The defendant did not specify any ground for challenging his sentence at the original sentencing or when the enhanced sentence was imposed. Rather, he objected to the original sentences as excessive, followed by a written motion to reconsider based on constitutional excessiveness, which the trial court denied. After the enhanced sentence was imposed, defendant made an oral motion for reconsideration, "based on previous arguments."[7] The trial judge denied the motion.
The failure to file a motion to reconsider sentence, or to state specific grounds upon which the motion is based, limits a defendant to a bare review of the sentence for constitutional excessiveness. State v. Dupre, 03-256 (La.App. 5 Cir. 5/28/03), 848 So.2d 149, 153, writ denied, 03-1978 (La.5/14/04), 872 So.2d 509.
However, defendant does not contend that any sentence on its own is constitutionally excessive. Rather, defendant contends, without any supporting argument, that a sentence of life plus sixty-seven years is constitutionally excessive. Thus, defendant's challenge is essentially to the consecutive nature of his sentences. This Court has recognized that this type of claim is not part of a bare constitutional review. See, State v. Watson, 02-1154 (La.App. 5 Cir. 3/25/03), 844 So.2d 198, writ denied, 03-1276 (La.5/14/04), 872 So.2d 506; State v. Badeaux, 01-406 (La.App. 5 Cir. 9/25/01), 798 So.2d 234, 237-238, writ denied, 01-2965 (La.10/14/02), 827 So.2d 414; State v. Hester, 99-426 (La.App. 5 Cir. 9/28/99), 746 So.2d 95, 103, writ denied in State v. Patterson, 99-3217 (La.4/20/00), 760 So.2d 342.
In State v. Watson, supra, the defendant challenged the consecutive nature of his sentences of life imprisonment on two counts of aggravated rape, ninety-nine years on armed robbery, with an additional five years for the use of a firearm, and seven years for simple robbery. Although he contended that the aggregate of the sentences amounted to an excessive sentence, defendant did not challenge any individual sentence as excessive. While noting that defendant was limited to a constitutional review for excessiveness, this Court declined to review the defendant's assignment of error in which he challenged his sentences as excessive because of their consecutive nature. Id. at 201, 211-212.
*939 This Court has, nonetheless, reviewed the merits of the excessiveness of consecutive sentences when reviewing a sentence in a bare constitutional review. See, State v. Badeaux, and State v. Hester, supra. It appears that Badeaux and Hester are distinguishable. In addition to challenging the consecutive nature of his sentences, the defendant in Badeaux contended that his sentences were individually excessive. State v. Badeaux, 798 So.2d at 237-241. In Hester, the defendants claimed that the trial judge erred in failing to provide justification for ordering their sentences to be consecutive. State v. Hester, 746 So.2d at 103-105.
In contrast, defendant in the present case has no specific argument as to why the sentences are excessive, nor does he challenge any of the sentences individually. Considering that defendant did not object to the consecutive nature of the sentences, and more importantly, because defendant does not on appeal specify the reason that the sentences are excessive, a review of defendant's consecutive sentences as excessive is precluded. See, State v. Watson, supra.
Of note, defendant received the mandatory minimum sentence for aggravated rape. Defendant failed to urge the trial court to deviate from the mandatory minimum, in accordance with State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672. Defendant's sentence as a second felony offender is twenty years shy of the maximum eighty-year sentence. Although defendant's sentence for simple robbery is the maximum prison term, the trial judge did not impose a fine, as he could have under La. R.S. 14:65.
In his fourth assignment of error, defendant urges this Court to review the record for errors patent and to take any appropriate corrective action. The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990).
Defendant was charged with aggravated rape, which is defined as a sex offense by La. R.S. 15:541(14.1). La. R.S. 15:540, et seq., requires registration of sex offenders. Further, La. R.S. 15:543(A) requires the court to notify a defendant of sex offender registration requirements of La. R.S. 15:542. This Court has held that, as with the omission of the Article 930.8 notification, this omission warrants a remand for written notification. See, State v. Stevenson, 00-1296 (La.App. 5 Cir. 1/30/01), 778 So.2d 1165, 1166-1167. Since Stevenson, this Court has ordered the trial court to inform defendant of the registration requirements as provided in La. R.S. 15:543(A), by sending appropriate written notice to the defendant, within ten days of this Court's opinion, and to file written proof in the record that defendant received such notice. State v. Stevenson, supra.
It is also noted that there is a conflict between the transcript and the commitment. The commitment reflects that the trial judge imposed the enhanced sentence without benefit of parole, probation, or suspension of sentence, whereas the transcript does not. La. R.S. 15:529.1(G) requires the enhanced sentence to be served without benefit of probation or suspension of sentence.
Under La. R.S. 15:301.1, a statute's requirement that a defendant be sentenced without benefit of parole, probation, or suspension of sentence is self-activating. See, State v. Converse, 03-711 (La.App. 5 Cir. 12/30/03), 864 So.2d 803, 811, writ denied, 04-195 (La.6/4/04), 876 So.2d 74 and therefore it is unnecessary for this Court to correct the illegally lenient sentence.
*940 For the foregoing reasons, we affirm the convictions and sentences and remand the matter and order that the trial court inform defendant of the registration requirements of La. R.S. 15:542, by sending appropriate written notice to defendant within ten days of this opinion, and to file written proof in the record that defendant received such notice.
AFFIRMED AND REMANDED.
NOTES
[1] The motion for appeal was premature when it was filed after conviction and sentence on the offense but before he was sentenced as multiple offender. However, that procedural defect was cured by the subsequent re-sentencing. State v. Balser, 96-443 (La.App. 5 Cir. 11/14/96), 694 So.2d 351, 354.
[2] The victim is identified by her initials because she was the victim of a sex crime. See, La. R.S. 46:1844(W).
[3] Mr. Valentine gave T.S. directions to the McDonald's on the Westbank Expressway at Ames Boulevard. Mr. Valentine testified that he assumed T.S. was driving to meet him.
[4] The search warrant return reflects that the quilts and blanket were seized, not the sheets.
[5] Detective Parker learned that the house was leased to a mentally disabled man, but that the man was essentially homeless.
[6] T.S. noticed that it was 7:30 p.m. when she was in the bedroom, and Officer Newby was dispatched at approximately 10:20 p.m.
[7] Although not specifically referenced, it seems that the defendant referred to the argument he made to quash the multiple bill based on waste of the State's resources.