# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 23-350

**STATE OF LOUISIANA**

**VERSUS**

**JAMARIA XAVIER RANDLE**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 354,755
HONORABLE PATRICIA KOCH, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**VAN H. KYZAR**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Ledricka J. Thierry, Judges.

**AFFIRMED;**
**REMANDED WITH INSTRUCTIONS.**

**Jane Hogan**
**Louisiana Appellate Project**
**310 North Cherry Street**
**Hammond, LA 70403**
**(985) 542-7730**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Jamaria Xavier Randle**

**J. Phillip Terrell, Jr.**
**District Attorney**
**Lea R. Hall, Jr.**
**Assistant District Attorney**
**Ninth Judicial District**
**P. O. Box 7358**
**Alexandria, LA 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**KYZAR, Judge.**

Defendant, Jamaria Xavier Randle, appeals her conviction for second degree murder and her sentence of life in prison without the benefit of probation, parole, or suspension of sentence. For the reasons set forth herein, we affirm her conviction and sentence and remand the matter to the trial court with instructions.

## FACTS AND PROCEDURAL HISTORY

Deven Brooks was found dead by Alexandria City Police (APD) investigators on January 11, 2022, within the area of a park located along the banks of the Red River in Rapides Parish. He had been shot once in the head. The victim's wrists were bound with vinyl-coated braided steel cables, white zip ties, and Gorilla tape. His mouth was also covered by Gorilla tape, and the steel cables were wound through his clothing and around his body. During their investigation into the murder, APD investigators arrested Defendant, her husband, Terrance Lavalais, and her cousin, Tremaine Veal, all as principals in the murder of the victim.

On April 12, 2022, a grand jury returned a true bill of indictment charging that Defendant did, "with specific to kill or inflict great bodily harm, commit Second Degree Murder or that she killed [the victim], while engaged in the perpetration of an armed robbery and aggravated kidnapping of [the victim], w/o specific intent to kill, in violation of LSA-R.S. 14:30.1[.]" The State filed an amended indictment on February 15, 2023, charging that on January 9, 2022, Defendant did "commit second degree murder upon [the victim], in violation of LSA-R.S. 14:30.1[.]" Lavalais and Veal were also indicted for their respective roles in the murder.

In brief, Defendant acknowledges the basic facts of the case leading to her arrest and indictment for the murder of the victim: "It is undisputed that Terrance Lavalais shot Deven Brooks after he was robbed at his home and transported to

Alexandria. It is further undisputed that Tremaine Veal and Jamaria Randle were present during the robbery, kidnapping, and murder of Deven Brooks."

Defendant was tried by a jury and, on February 17, 2023, was convicted as charged. On April 20, 2023, the trial court imposed the mandatory penalty of life in prison without probation, parole, or suspension of sentence. This appeal followed, wherein Defendant asserts three assignments of error:

1.  The evidence is insufficient to convict Jamaria Randle of second-degree murder.

2.  The trial court erred when it allowed Terrance Lavalais to testify about confidential spousal communication[s], despite Ms. Randle's assertion of the spousal confidential communications privilege.

3.  Jamaria Randle received ineffective assistance of counsel because her attorney did not call file [sic] any pretrial motions seeking to introduce evidence of prior instances of domestic abuse, failed to call witnesses who could testify about Terrance's reputation for truthfulness, and failed to consult an expect in intimate partner violence and coercive control.

## DISCUSSION

### *Sufficiency of the Evidence*

Defendant first argues that the evidence presented was insufficient to support the second degree murder conviction. She asserts that the conviction should be vacated as it is based primarily on the self-serving and inconsistent testimony of her husband, Lavalais, whom she argues was highly abusive and controlling. While acknowledging that it is undisputed that Lavalais shot the victim, she claims that his testimony is the only evidence introduced that established that she devised the plan to rob the victim and actively participated in the crime. Pursuant to the terms of his plea deal, Lavalais would only potentially benefit if his testimony substantially assisted the State in securing Defendant's conviction. She argues that the plea deal

2

coupled with inconsistencies in Lavalais's testimony show that he was not believable, and as such, his testimony should not have been accepted by the jury.

The State presents a different version of the case and Defendant's involvement altogether, asserting that the evidence was overwhelming in establishing her guilt beyond a reasonable doubt. The State points to direct physical evidence of Defendant's fingerprints found on a package of zip ties located in the victim's apartment after the murder, which were identified as the same zip ties Defendant shoplifted from a Walmart store and those used to bind the victim. APD was able to recover the Walmart video showing Defendant shoplifting the zip ties, tape, and steel cables. The State also points to other evidence including video evidence showing Defendant obtaining money from the victim's bank accounts after the murder and cell phone data showing her contacts with Lavalais and Veal before and during the relevant times of the murder and its aftermath.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979), *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Second degree murder is the killing of a human being "[w]hen the offender has a specific intent to kill or to inflict great bodily harm;" or "[w]hen the offender is engaged in the perpetration or attempted perpetration of" "aggravated kidnapping,

3

second degree kidnapping," or "armed robbery," among other enumerated felonies, "even though he has no intent to kill or to inflict great bodily harm." La.R.S. 14:30.1(A)(1), (2). "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24. Here the State ultimately charged Defendant using the short form indictment under both theories, a killing with specific intent to kill or inflict great bodily harm, and under the felony murder doctrine by engaging in the perpetration or attempted perpetration of armed robbery and/or aggravated kidnapping where the victim was killed. Under the felony murder doctrine, no proof of intent to kill is required. La.R.S. 14:30.1(B).

Louisiana Revised Statutes 14:64(A) defines armed robbery as "the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon." In order to find that a defendant was engaged in an armed robbery, the State must prove the following elements: (1) the "[d]efendant intentionally took something of value belonging to another;" (2) "[t]he thing was taken from the possession of or immediate control of another;" (3) the "[d]efendant used force or intimidation in order to accomplish the taking;" and (4) the "[d]efendant was armed with a dangerous weapon." *State v. McCartney*, 96-58, p. 20 (La.App. 3 Cir. 10/9/96), 684 So.2d 416, 429, *writ denied*, 97-508 (La. 9/5/97), 700 So.2d 503, *cert. denied*, 522 U.S. 1002, 118 S.Ct. 573 (1997).

Louisiana Revised Statutes 14:44 defines aggravated kidnaping as follows:

Aggravated kidnapping is the doing of any of the following acts with the intent thereby to force the victim, or some other person, to give up anything of apparent present or prospective value, or to grant any advantage or immunity, in order to secure a release of the person under the offender's actual or apparent control:

4

(1) The forcible seizing and carrying of any person from one place to another; or

(2) The enticing or persuading of any person to go from one place to another; or

(3) The imprisoning or forcible secreting of any person.

Lavalais testified that Defendant concocted the scheme to rob and kidnap the victim to get his money. According to Lavalais, it was Defendant who knew the victim, as she had had a sexual relationship with him while he was away training for employment at Job Corps. He stated that she also knew the victim's financial circumstances because of the relationship between them, including the fact that the victim had bought her a car.

Defendant argues that Lavalais's testimony should not be believed because of his agreement to testify in exchange for the possibility of leniency and because of the alleged inconsistencies in his testimony. Having reviewed the record from the trial and the voluminous physical and documentary evidence adduced, including multiple videos directly implicating Defendant in the events leading up and following the robbery and kidnapping of the victim, we find the evidence to be more than sufficient to support the jury's verdict of second degree murder.

There is an abundance of other evidence, aside from Lavalais's testimony, establishing Defendant's active role in the underlying crimes, including her own statements. Defendant admitted, during cross examination, to her active participation in the robbery and kidnaping, leading to the death of the victim:

Q. And you transported [the victim] from one place to another without his consent.

A. Yes.

Q. And he was physically injured both before and after that transportation. Correct?

A. Hmm. I, I don't know if he was really, really hurt or anything.

5

Q.   Okay.

A.   He wasn't bleeding (interrupted)

Q.   He was (interrupted)

A.   -- but he was, he was, um, like bound.

Q.   Okay. He's bound (interrupted)

A.   Or whatever, so (interrupted)

Q.   -- and he had been tackled. Correct?

A.   Yeah, so (interrupted)

Q.   He'd been taken down to the floor.

A.   -- so, his body or something might have hurted [sic]. You're right. Okay.

Q.   Okay. And then he was certainly killed afterwards. Right?

A.   Yes.

Q.   And so, that's all happening without anybody standing over you, without anybody telling you what to do and all happening because you decided to do it. Correct?

A.   Yes.

Q.   And that's all happening in a circumstance where you were trying to get money out of [the victim] and that's what started the whole thing. Isn't it?

A.   Yes.

Defendant admitted to shoplifting the zip ties, tape, and steel cables. Despite this, she claimed there was no plan to tie the victim up during the robbery and kidnapping and that she was coerced in to participating because of past ill treatment she suffered at the hands of Lavalais. However, she admitted that she never reported any abuse, physical or otherwise, to authorities:

Q.   And so, tell the ladies and gentlemen of the jury about all those times that you reported Terrance to the police for the beatings.

A.   I never reported Terrance to the police for the beatings.

6

As with the other evidence, the jury, knowing the details surrounding his testifying and his plea, was free to accept or reject Lavalais's testimony. It is well recognized that "the testimony of a single witness is sufficient to support a conviction '[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence[,]'" and a "trier of fact may accept or reject the testimony of any witness[.]" *State v. F.B.A.*, 07-1526, p. 2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009 (alteration in original) (quoting *State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936), *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138. A determination of the credibility of any witness, "in whole or in part, is left to its sound discretion" of the trier of fact and "'will not be reweighed on appeal.'" *Id.*

We further find no internal inconsistency or irreconcilable conflict between Lavalais's testimony, other witness testimony, physical evidence, documentary evidence, photographic evidence, and video evidence. Defendant explicitly asks this court to reject the jury's credibility determinations, ignore the other evidence, and acquit her of being a principal to second degree murder. We cannot do so under these facts.

Defendant's own statements, though conflicting as to who killed the victim, provided information sufficient to satisfy the elements of armed robbery and aggravated kidnapping. Defendant, along with Lavalais and Veal, intended to take the victim's belongings and money while Veal was armed with a dangerous weapon. As a principal to the crime, it is not necessary that Defendant, herself, be armed. *State v. Dominick*, 354 So.2d 1316 (La.1978). Defendant participated along with the others in forcibly seizing and carrying the victim from one place to another with the intent to force him to give up anything of apparent present or prospective value. Defendant even drove the victim's car, with him in the passenger seat obviously still

7

bound and gagged, as the others followed in her vehicle. Shortly thereafter, they went to the park, where the victim was murdered by a gunshot to the head and pushed down the embankment to the edge of the Red River.

Officer Jacob Vogel, formerly with the Ball Police Department, was on duty on the night of January 9, 2022. At 10:30 p.m., he stopped a vehicle on U.S. Highway 165, which runs through Ball, Louisiana, for having no illuminated taillights. He first approached and contacted the occupant in the front passenger seat, a tactic done for officer safety reasons. A black male occupied the passenger seat, and a female was the driver. His vest camera recorded the stop and the encounter. The driver was Defendant, and the vehicle she was driving was registered to the victim. She identified the passenger as her brother, not her husband, though Officer Vogel later identified him as Lavalais. Defendant was able to get the taillights working during the encounter, so Officer Vogel issued citations for having no proof of insurance and no proof of registration in the vehicle. She was then sent on her way.

Approximately forty-five minutes after the traffic stop, Officer Vogel was notified to go the Timber Trail apartments located in Ball, about a possible kidnapping. A witness at the location advised that she believed her neighbor, the victim, might be involved, causing Officer Vogel to recall his traffic stop of the victim's vehicle just prior to the call. Officer Vogel contacted Defendant through the phone number he had from the citation to check on her, and she told him she was "not in distress, but she was upset over getting a citation from the traffic stop, so she went to her mom's house on Jones Street[.]"

Latoya Jonese was at the Timber Trail apartments on the night of January 9, 2022, when she heard what appeared to be glass breaking and went outside to see what was taking place. She saw broken glass on the ground and went back in and looked out through the window to see what the commotion was outside. At the time

8

she was in her aunt's apartment, just below the victim's apartment. She saw three individuals and the victim. Of the three, one was female, and the other two were what she thought were African American males. The individuals pushed the victim into his vehicle, and she testified that the victim looked towards her. She said that she "saw his mouth bound, and his arms taped, and it looked like they were pushing him into the back seat or the trunk[.]" She then called 911, reaching the Ball Police Department.

Detective Jeremy Moreau, of the APD Crime Scene Division, testified that he responded to 101 Lower Line in Alexandria, where he and other crime scene detectives observed the victim lying face down on the bank of the river. His hands were bound together with black Gorilla tape, zip ties, and a coated bicycle cable. The victim had an oblong wound to the head, which Detective Moreau believed to be a gunshot exit wound. Photographs of the scene verified his description. Black Gorilla tape had pulled away from the victim's mouth, and he had a shoe on one foot and a sock on the other foot. A piece of an Xbox game wrapper was stuck to the sock. The detectives also located a .40 caliber cartridge case at the top of the levee.

Detective Moreau testified that when he went to the victim's apartment, he saw an Xbox controller. He further observed and secured as evidence a "ton of zip ties, white zip ties that were on the ground that resembled the zip ties that were around [the victim]." The zip ties as well as the steel cables were found in the bedroom, and a roll of the black Gorilla tape together with torn pieces of the Gorilla tape stuck on a box were found in the kitchen area. It was later determined that Defendant's fingerprints were found on the package containing the zip ties discovered in the victim's home.

Video evidence from Walmart shows Defendant shoplifting the distinct items used to bind and kidnap the victim prior to his abduction. Lavalais was not with her

9

at the time, watching her or forcing her to participate, though he had initially entered the store with her. Video evidence further shows the traffic stop after Defendant and Lavalais left the victim's apartment in his vehicle to attempt to withdraw money from his accounts. The video shows Defendant calmly talking to the officer, lying to him about Lavalais's relation to her as her cousin, while Lavalais himself sits timidly inside the car. Video evidence shows her later personally withdrawing money from the victim's account, unaided by Lavalais.

A search of Defendant's vehicle resulted in the seizure of the Xbox game taken from the victim's apartment. This was consistent with the Xbox controller observed by Detective Moreau at the victim's apartment. It was also consistent with the Xbox package wrapper found stuck to the victim's sock. The Xbox was positively identified as belonging to the victim.

Defendant argues that she was in an abusive relationship with Lavalais, which led her to being coerced by him into participating in this murderous plot. Louisiana Revised Statutes 14:18(6) provides that coercion is a defense to any crime, except murder, such that an offender's conduct is justifiable, although otherwise criminal, when "committed through the compulsion of threats by another of death or great bodily harm, and the offender reasonably believes the person making the threats is present and would immediately carry out the threats if the crime were not committed[.]" As clearly reflected within this provision, "the defense of coercion is not available to one charged with murder[.]" *State v. Glass*, 455 So.2d 659, 664 (La.1984), *cert. denied*, 471 U.S. 1080, 105 S.Ct. 2159 (1985).

While Defendant acknowledges that the defense of justification is not available to the crime of murder, she argues that this settled law should not apply to her as she is only guilty of felony murder, since one of her cohorts pulled the trigger. We can find no case law supporting this argument, and we refuse to apply such a

10

break from the clear holdings of our supreme court and the clear pronouncement of the law in question. In fact, in *McCartney*, 684 So.2d at 429, this court rejected this very argument, noting "that the defendant in *State v. Joseph*, 573 So.2d 1248 (La.App. 4 Cir.1991), *writ denied*, 577 So.2d 31 (La.1991), tried this same 'back door' reasoning to no avail." Defendant claims that her case is distinguishable from *McCartney*. We disagree.

Louisiana Revised Statutes 14:18(6) does not distinguish between a specific intent murder or a felony murder. The coercion defense simply does not apply to any case in which the defendant is charged with murder. The totality of the evidence here was overwhelming and supports the conviction for second degree murder beyond a reasonable doubt. Defendant was not coerced. She had a multitude of opportunities to disengage from any influence exerted by Lavalais, if any existed. She could have warned the victim. She could have notified the authorities on multiple occasions before the murder, getting protection for herself as a result. She had the perfect opportunity to end the kidnapping and robbery of the victim when stopped by the patrol officer for a traffic violation while driving the victim's car, even as he was being held captive in his own home. As the evidence showed in the police cam video of that stop, Lavalais sat fearfully in the car while the officer talked with Defendant. She calmly lied to the officer, resulting in him issuing the citation and sending her on her way to further participate in the victim's murder. The evidence that she was a principal to second degree murder was more than sufficient to support the jury's verdict, and her argument to the contrary lacks merit.

### *Confidential Communication Between Spouses*

Defendant next argues that the trial court erred when it allowed Lavalais to testify about confidential spousal communications he had with Defendant, despite her objection and assertion of the privilege. During Lavalais's testimony, Defendant

11

objected to questioning concerning communications that he had with her about various matters, including her relationship with the victim. Defendant withdrew her objection to the conversation about her having an affair with the victim but reserved the right to object to other confidential communications. Later, Lavalais was asked about discussions he had with Defendant about plans to rob and kidnap the victim:

Q. Did y'all have discussions about [the victim] in the time leading up to the 9th, 10th, and 11th of January?

A. Yes, sir.

Q. What were those discussions about?

Defendant objected, and the trial court overruled the objection, allowing the question. Lavalais testified that the conversations he and Defendant had about robbing the victim were then discussed with Veal when they asked him to participate in the crime. Lavalais testified that he overheard a phone conversation between Defendant and Veal, where she told him about "a lick we could hit[,]" meaning a person they could rob, referring to the victim. Veal was included in the plan because he had a gun, a .40 caliber black and gray pistol.[1]

In a criminal case, a spouse called as a witness has the privilege of not testifying against the other spouse during the existence of their marriage. La.Code Evid. art. 505. However, "the statute does not prohibit a spouse from voluntarily taking the stand against a spouse who is a defendant in a criminal case. *State v. Taylor*, 94-696, p. 5 (La. 9/6/94), 642 So.2d 160, 164. While this privilege is general to each spouse and is waivable by the spouse witness, a spouse may also invoke a specific privilege protecting confidential communications between the married couple. La.Code Evid. art. 504. "These spousal privileges are created by statute and

---

[1] This gun matched the description of the gun appearing in a photograph taken by Veal of himself with the gun, and cash apparently obtained from the victim, and the gun recovered during the investigation.

12

are not constitutional rights." *In re Grand Jury Subpoena*, 19-962, p. 5 (La. 5/28/20), 340 So.3d 796, 799.

"A communication is 'confidential' if it is made privately and is not intended for further disclosure unless such disclosure is itself privileged[,]" and each spouse may "prevent the other spouse from disclosing, confidential communications with the other spouse while they were husband and wife[,]" both during and after the marriage. La.Code Evid. art. 504(A), (B). Communications between spouses are presumed to be confidential and, thus, privileged, where there is a lack of evidence to the contrary. *State v. Dupuy*, 319 So.2d 294 (La.1975). However, when third persons are present at the time of the conversation, the privilege is unavailable to the defendant spouse. *Id.* If the State makes a prima facie showing that the communications were not privileged and this showing is not rebutted by the defendant, the trial court does not err in concluding that the statements are not privileged. *State v. Narcisse*, 426 So.2d 118, 123 (La.1983), *cert. denied*, 464 U.S. 865, 104 S.Ct. 202 (1983).

Here, the State established through Lavalais's testimony that the conversations about robbing the victim were shared with and included Veal. Defendant herself called Veal to enlist his participation. Accordingly, the State made a prima facie showing that the communications between Lavalais and Defendant about robbing the victim were not privileged. Defendant did not rebut that showing, and the trial court did not err in allowing the testimony.

### *Ineffective Assistance of Counsel Claim*

Defendant next argues that she received ineffective assistance of counsel because her counsel failed to consult an expert in coercive control and intimate partner violence and failed to call defense witnesses who were present and could

13

have testified about Lavalais's general reputation as it related to his truthfulness and their marriage.

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984) (emphasis added), provides the standard for determining whether a conviction must be reversed because of ineffective assistance of counsel:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, *a trial whose result is reliable*. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The burden of proof in ineffective assistance of counsel claims falls upon the defendant. *State v. Griffin*, 02-1703 (La.App. 4 Cir. 1/15/03), 838 So.2d 34, *writ denied*, 03-809 (La. 11/7/03), 857 So.2d 515.

In *State v. Christien*, 09-890, p. 7 (La.App. 3 Cir. 2/3/10), 29 So.3d 696, 701, this court set forth the following explanation for the handling of ineffective assistance of counsel claims on appeal:

> A claim for ineffective assistance of counsel is properly raised in an application for post-conviction relief because this allows the trial court to order a full evidentiary hearing on the matter. *State v. Burkhalter*, 428 So.2d 449 (La.1983). However, where the record contains sufficient evidence to decide the issue, and the issue is raised by an assignment of error on appeal, it may be considered by the appellate court. *State v. Tapp*, 08-1262 (La.App. 3 Cir. 4/1/09), 8 So.3d 804; *See also State v. James*, 95-962 (La.App. 3 Cir. 2/14/96), 670 So.2d 461.

We find that the record provides sufficient evidence for us to decide this issue as it is posed, and as such, we will consider it here on direct appeal.

14

"The failure to prove either one" of the two components as set forth in *Strickland* "is fatal to an ineffective assistance of counsel claim." *State v. Chandler*, 22-1506, p. 3 (La. 5/5/23), 362 So.3d 347, 350. Here, we find no prejudice was or can be established under the facts of this case, nor can Defendant prove deficient performance.

While Defendant argues that her trial counsel was ineffective for failing to introduce evidence of her abused status at the hands of Lavalais, or to retain and call an expert in the area of intimate partner violence and coercive control, we find that any such evidence would be directly related to a defense of justification by coercion. We have previously concluded that a coercion defense is not available to one charged with murder under these circumstances. Given the plain language of the law, counsel can hardly be faulted for failing to pursue evidence and testimony that is not otherwise admissible. This is not evidence of battered spouse or domestic partner syndrome, which is admissible in a murder trial by one domestic partner accused of killing or harming the other. Such evidence of the battered spouse syndrome is related to the defense of self-defense because of the domestic partner's reasonable belief that the actions taken are necessary to stop further physical abuse. *State v. Curley*, 16-1708 (La. 6/27/18), 250 So.3d 236. A battered spouse or domestic partner defense, and evidence related thereto, was not and is not relevant in the instant case involving the murder of a third party.

In addition, the mountain of evidence showing that Defendant willingly and actively participated in this heinous crime, both before and after, negates any credible argument that such testimony would have resulted in a different outcome. Further, Lavalais's reputation and background, together with the details surrounding his decision to testify at Defendant's trial, was fully explored before the jury. That he initially gave a different statement than that which he gave at trial was known.

15

Defendant, of course, disregards the fact that she also gave differing statements. In short, the jury chose to accept Lavalais's testimony, at least some of it. However, we have already concluded that even without it, all the elements of second degree murder were otherwise established by overwhelming evidence, including Defendant's own statements. The jury did not believe that she was under the spell of Lavalais. Thus, it is not for us to disagree with the jury's credibility determination. Accordingly, Defendant has failed to establish either of the *Strickland* requirements.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.

The record does not indicate that the trial court advised Defendant of the prescriptive period for filing post-conviction relief as required by La.Code Crim.P. art. 930.8.[2] Thus the trial court is ordered to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice. *State v. Viltz*, 18-184, (La.App. 3 Cir. 11/28/18), 261 So.3d 847.

## DECREE

The conviction and sentence of Defendant, Jamaria Xavier Randle, for second degree murder are affirmed. We further direct the trial court to inform Defendant of the provisions of La.Code Crim.P. art. 930.8 by sending appropriate written notice

---

[2] At sentencing, the trial court stated, "And the two year post-conviction . . . relief notice is also provided to you." On contacting the clerk's office to obtain a copy of the form given to Defendant, we were informed that no such form was provided to Defendant in open court at the time of sentencing.

to Defendant within ten days of the rendition of this opinion and to file written proof in the record that Defendant received the notice.

**AFFIRMED; REMANDED WITH INSTRUCTIONS.**