STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-516

************

ON REMAND FROM THE LOUISIANA SUPREME COURT

**************

STATE OF LOUISIANA

VERSUS

THERAND GUY THACKER

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 310218
HONORABLE THOMAS M. YEAGER, DISTRICT JUDGE

**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and
Phyllis M. Keaty, Judges.

AFFIRMED, IN PART; VACATED, IN PART;
VACATED AND REMANDED.

**James C. Downs**
**District Attorney - 9th JDC**
**Sheryl L. Laing**
**Assistant District Attorney – 9th JDC**
**P.O. Drawer 1472**
**Alexandria, LA 71309-1472**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Edward John Marquet**
**Louisiana Appellate Project**
**Post Office Box 53733**
**Lafayette, LA 70505-3733**
**(337) 237-6841**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Therand Guy Thacker**

**Therand Guy Thacker**
**Avoyelles Corr. Ctr.- Cajun 3 C1**
**1630 Prison Rd.**
**Cottonport, LA 71327**
**IN PROPER PERSON:**
    **Therand Guy Thacker**

**SAUNDERS, Judge.**

The Defendant, Therand Guy Thacker, was charged in an indictment filed on February 23, 2012, with the following eleven counts: 1) aggravated rape, a violation of La.R.S. 14:42; 2) aggravated rape, a violation of La.R.S. 14:42; 3) attempted aggravated rape, a violation of La.R.S. 14:42 and La.R.S. 14:27; 4) aggravated incest, a violation of La.R.S. 14:78.1; 5) aggravated incest, a violation of La.R.S. 14:78.1; 6) aggravated incest, a violation of La.R.S. 14:78.1; 7) aggravated incest, a violation of La.R.S. 14:78.1; 8) aggravated incest, a violation of La.R.S. 14:78.1; 9) aggravated incest, a violation of La.R.S. 14:78.1; 10) intimidating a witness, a violation of La.R.S. 14:129.1; and 11) obstruction of justice, a violation of La.R.S. 14:130.1. The Defendant was arraigned on March 2, 2012, and entered a plea of not guilty. On March 27, 2012, the State filed an amended indictment.[1]

Jury selection commenced on October 16, 2012, and, on October 18, 2012, the jury returned the following verdicts: 1) guilty of the responsive verdict of sexual battery, a violation of La.R.S. 14:43.1; 2) guilty of the responsive verdict of sexual battery; 3) guilty; 4) guilty; 5) guilty; 6) guilty; 7) guilty; 8) guilty; 9) guilty; 10) not guilty; and 11) guilty. On November 2, 2012, the Defendant was sentenced to serve twenty years at hard labor for obstruction of justice and fifty years at hard labor without benefit of probation, parole, or suspension of sentence for each count of sexual battery and one count of aggravated incest. The sentences were to be served concurrently. The trial court failed to impose sentences for the remaining five counts of aggravated incest.

---

[1]Although filed, this court could find no changes to the indictment in the amendment filed by the State.

A motion for appeal was filed on November 15, 2012, and was subsequently granted. In a brief filed by appellate counsel, the Defendant asserted two assignments of error. Therein, the Defendant contended the evidence presented was insufficient to support guilty verdicts regarding the sexual offenses of which he was convicted, and the trial court imposed excessive sentences. In a pro se brief, the Defendant also asserted two assignments of error. Therein, he contended the trial court refused to allow exculpatory evidence, and the indictment charged multiple counts of the same offense, which constituted double jeopardy.

On appeal, this court affirmed the Defendant's convictions, finding the evidence presented by the State was sufficient under *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). *State v. Thacker*, 13-516 (La.App. 3 Cir. 1/22/14), 130 So.3d 1037, *vacated*, 04-418 (La. 10/24/14), __ So.3d __. However, this court vacated the Defendant's sentences for sexual battery, attempted aggravated rape, and obstruction of justice, and the single sentence imposed for six counts of aggravated incest and remanded the matter for resentencing. *Id.* On March 17, 2014, the trial court resentenced the Defendant.

The Defendant sought review of this court's ruling in the supreme court. *See Thacker*, __ So.3d __. In its opinion, which was issued on October 24, 2014, the supreme court stated:

> In reviewing defendant's claim that the sentence for attempted aggravated rape was unconstitutionally excessive, however, the court of appeal found that it was unable to determine the victim's age at the time of this offense from the record. *See State v. Thacker*, 13-0516, pp. 15-16 (La.App. 3 Cir. 1/22/14), 130 So.3d 1037, 1047-48. The court of appeal correctly noted that if the victim was not under the age of 13 at the time of the offense was perpetrated then the evidence would not support a conviction for attempted aggravated rape in accordance with La. R.S. 14:42(A)(4). Nonetheless, the court of appeal did not address this issue further because "[t]his concern was not raised by the Defendant in his briefs to this court." *Id.*, 13-0516 at 16, 130 So.3d at 1048. Similarly, in considering whether defendant's sentence for obstruction of justice was unconstitutionally excessive,

the court of appeal indicated that it was unable to determine the factual basis of this conviction but did not consider whether sufficient evidence was presented to support this conviction because defendant did not raise the issue. *Id.*, 13-0516 at 21, 130 So.3d at 1050.

When the state's case is devoid of evidence of an essential element of the charged offense, the conviction and sentence must be set aside "regardless of how the error is brought to the attention of the reviewing court." *State v. Raymo*, 419 So.2d 858, 861 (La.1982). The court of appeal thus erred in failing to consider the issue of sufficiency further once it came to the court's attention. In addition, the court of appeal's decree requires clarification. The court of appeal rejected defendant's claim that the sentence for attempted aggravated rape is unconstitutionally excessive. However, in its decree, the court of appeal vacated this sentence. Accordingly, the application is granted to vacate the court of appeal opinion and remand the matter to the court of appeal for reconsideration consistent with *State v. Raymo*, *supra*. The court of appeal is further directed to clarify the decree.

*State v. Thacker*, 14-418 (La. 10/24/14), ___ So.3d ___, ___.

In light of the language in the supreme court's ruling vacating this court's prior opinion, we will once again review all errors assigned by the Defendant on appeal. Additionally, we find that the trial court sentencing that occurred on March 17, 2014, as a result of the remand ordered by this court is null.

**FACTS:**

The Defendant was convicted of sexual offenses involving his nieces, N.D. and C.D.

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find that there is an error patent regarding the aggravated incest convictions and a potential error patent regarding the sexual battery convictions, which will be discussed within the assignment of error relating to excessiveness of the sentence for the reasons explained in the discussion of the assignment of error.

The Defendant was convicted of six counts of aggravated incest. The minutes of sentencing indicate that the trial court imposed a sentence of fifty years at hard labor without the benefit of probation, parole, or suspension of sentence on each count of aggravated incest. However, the sentencing transcript indicates the trial court imposed a single sentence of fifty years at hard labor without the benefit of probation, parole, or suspension of sentence, and it failed to specify for which conviction it was imposing the sentence. Additionally, the trial court failed to impose sentences for the other aggravated incest convictions. In *State v. Grace*, 10-1222, p. 19 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 825-26, *writ denied,* 11-961 (La. 10/21/11), 73 So.3d 382, the court explained in pertinent part:

> In instances where the minutes and the transcript differ, the transcript must prevail. *State v. Kimbrough*, 09-1564 (La.App. 3 Cir. 6/2/10), 38 So.3d 1258. Louisiana Code of Criminal Procedure Article 879 states, "[i]f a defendant who has been convicted of an offense is sentenced to imprisonment, the court shall impose a determinate sentence." Where the trial court has imposed one sentence for multiple counts, this court has previously set aside the defendant's sentence on those counts as indeterminate and remanded the case to the trial court for resentencing on each count. *State v. Monceaux*, 04-449 (La.App. 3 Cir. 10/20/04), 885 So.2d 670.

Consequently, the single sentence imposed on the aggravated incest conviction is vacated and the matter remanded to the trial court for a legal sentence to be imposed on each of the aggravated incest convictions in accordance with the applicable penalty in effect at the time of the commission of the offense.[2]

**ASSIGNMENT OF ERROR NUMBER ONE:**

---

[2]Although moot due to our decision to vacate the aggravated incest sentences, the trial court did not make any finding as to the Defendant's ability to pay the victims' reasonable costs of counseling pursuant to La.R.S. 14:78.1(E). *See State v. P.T.*, 07-665 (La.App. 3 Cir. 12/5/07), 970 So.2d 1255, *writ denied*, 08-26 (La. 5/30/08), 983 So.2d 895. Louisiana Revised Statutes 14:78.1(E) was in force at the time relative to this case. It has since been repealed in 2014.

In his first assignment of error, the Defendant contends the evidence presented was insufficient to support verdicts of guilty of the sexual offenses in counts one through nine. We disagree.

The Defendant was convicted of two counts of sexual battery of C.D., one count of attempted aggravated rape of C.D., and six counts of aggravated incest. The victims of the aggravated incest charges were not set forth in the indictment.

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

*State v. Freeman*, 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580.

> Furthermore, the testimony of a single witness is sufficient to support a conviction "[i]n the absence of internal contradiction or irreconcilable conflicts with physical evidence." *State v. Dixon*, 04-1019, p. 12 (La.App. 5 Cir. 3/15/05), 900 So.2d 929, 936. The trier of fact may accept or reject the testimony of any witness, and the determination of the credibility of that witness, in whole or in part, is left to its sound discretion and "will not be re-weighed on appeal." *Id.* at 936.

*State v. F.B.A.*, 07-1526, pp. 1-2 (La.App. 3 Cir. 5/28/08), 983 So.2d 1006, 1009, *writ denied*, 08-1464 (La. 3/27/09), 5 So.3d 138.

5

N.D. was twenty years old at the time of trial. N.D.'s aunt, Wtissue, was married to the Defendant. When N.D. was growing up, she occasionally spent the night with her uncle, the Defendant, and her Aunt Wtissue.

N.D. testified that, when she was five to seven years old, she spent the night "over there," and "[h]e" brought her to the shed where the washer and dryer were located, sat her on the washer, pulled down her pants, and licked her vagina with his tongue. N.D. indicated there was also a time the Defendant was working on a vehicle in his shop, and he put her in the back seat of that vehicle, pulled down her pants, and started "using his tongue on [her] again." N.D. thought she was in middle school when this incident occurred.

N.D. got pregnant when she was seventeen years old. She testified that during her pregnancy while she was sitting at a computer in the Defendant's home, he shoved his hand down her pants and put his finger inside her. N.D. testified that, "[a]fter [she] was pregnant," she accompanied the Defendant to a house where he had to work on an air conditioner. While there, the Defendant took her to a bedroom and tried to stick his "wiener" inside her; however, she was able to get away. N.D. stated, "he was busy looking down, trying to unbuckle his pants, and so I was able to slip by him really fast." N.D. was eighteen at the time of this incident. N.D. remembered another incident that occurred after her son was born. At that time, she went to a storage area of the Defendant's old house with him, and he pulled down her pants and started licking her.

N.D. testified there were no witnesses to the events at issue. However, she told her mother about the abuse once when she was seven or eight years old, but no action was taken. As an adult, N.D. told her boyfriend about the abuse. N.D. subsequently reported the abuse to police. N.D. testified that her grandfather told her she needed to drop the charges against the Defendant because he did not

6

deserve to be in jail.  N.D. also testified that her mother was pressured and told her to drop the charges.  N.D. said she waited to report the abuse because her mother did not believe her which made her think that no one else would believe her.  N.D. was aware the Defendant had been charged with a sexual offense before she reported her abuse to police.

C.D. was the Defendant's second alleged victim.  C.D. was sixteen years old at the time of trial, and her date of birth was June 26, 1996.  During C.D.'s testimony, the video of her interview at Rapides Children's Advocacy Center was played to the jury.[3]  The interview was conducted on December 16, 2011.  During the interview, C.D. stated that, when she was six years old, she was at the Defendant's house staying the night with his daughter, Chasta, when the Defendant put his hand up her shorts and touched her private part under her panties.  C.D. did not tell anyone what had occurred, as she was scared no one would believe her.  She subsequently stated, "this stuff happened to me, my sister and my cousin, Chasta[,] his own daughter."  C.D. said she and Chasta told Chasta's mother, who confronted the Defendant, and the Defendant said "it was just an accident."  The next day, C.D. and Chasta were helping the Defendant build a cabinet in the kitchen.  C.D. was wearing a skirt while sitting on the floor, and the Defendant told her to lean back and tried to stick his tongue "down there."  C.D. described the event as follows:  "He lifted up my skirt and he looked at my underwear and he was getting closer and he heard Chasta coming so he stopped."  On cross-examination, C.D. indicated she was fourteen years old when this event occurred.

_____

[3]Ashley Honor, a forensic interviewer at the center, interviewed C.D.  At the time of the interview, C.D. was under seventeen years of age.

C.D. next described another event that occurred when she was fourteen years old around Christmas time and the Defendant started rubbing all over her body. C.D. said the Defendant used his hand to rub her "boobs," "nuny cat," and "butt."

C.D. described another incident when she was "maybe about 10," the Defendant made her put her hand down his pants, and she touched his "hot dog." C.D. said that on another occasion, she and Chasta were in the tub or shower with bathing suits on, and the Defendant was washing their hair. During that time, the Defendant stuck C.D.'s hand down his pants. C.D. testified she was "around ten" when this occurred.

C.D. said that on August 2, 2011, the Defendant put his hands in her shirt and touched her "boobs" under her underwear. The Defendant also stuck his hand in her gym shorts and put his finger in her "nuny cat hole." That night, the Defendant pulled his pants down and tried to put his "hot dog" in her "nuny cat." C.D. described the event as follows:

> [C.D.]:     He stuck half of his hot dog in my nuny cat and I started crying and told him to stop.
>
> Ashley:     Okay. And uh, how was he able to stick his hot dog in?
>
> [C.D.]:     Whenever he pulled his pants down he stuck it in through the back of my shorts and stuck it through.
>
>     . . . .
>
> [C.D.]:     Through my shorts and underwear.

C.D. said the Defendant told her, "relax, just take it." C.D. also stated that when she was nine or ten years old, the Defendant licked the outside of her "nuny cat."

C.D. testified that after the Defendant was arrested, her aunt asked other family members to talk to her about dropping the charges against the Defendant. C.D. met with a detective in an attempt to drop the charges. C.D. testified that she

8

told the detective that her family was being torn apart, but the accusations were true.

C.D. acknowledged that during her interview at the advocacy center she stated that Chasta said things had happened to her too, and she testified that Chasta told her the Defendant molested her as well. C.D. testified that Chasta did not witness any of the abuse she suffered. C.D. denied knowing the Defendant had previously been charged with a sex offense.

When asked if she had been banned from the Defendant's home, C.D. indicated that a couple of months before charges were filed against the Defendant, she was involved in a fight with her grandmother and was asked not to return to the Defendant's home. She denied telling the Defendant that she would have him locked up for molesting her.

Detective Steve Phillips testified that he was notified of a report regarding C.D. on December 13, 2011, and set up an appointment for her to be interviewed at the Rapides Children's Advocacy Center. Detective Phillips subsequently monitored phone calls between the Defendant and his wife. Detective Phillips discussed their conversations as follows:

> There's a series of phone calls over the next couple of weeks dealing with -- between him and his wife. Basically, he was explaining to his wife that if we can get an affidavit signed by the kids, being [N.D.] and her sister, CD, to drop the charges or say that they lied about the charges and made it up, then they'll have to let me go. One of [sic] the very first it appeared that [Wtissue] started things off by herself because she was explaining to [Therand] that, don't worry, this is the Sunday, he was arrested on a Friday -- this is Sunday, don't worry, I think I've got it taken care of. They're going to come up there and drop the charges.

The day following this conversation, C.D. was brought to Detective Phillips's office. Detective Phillips was not sure if Wtissue had provided C.D. with transportation that day. During that meeting, C.D. informed Detective

Phillips that she wanted to drop the charges against the Defendant. When he asked why, C.D. told him the abuse did occur, but it was tearing her family apart. Detective Phillips then took a recorded statement from C.D. In that statement, C.D. repeated what she had previously told Detective Phillips.

Detective Phillips was further questioned about C.D. dropping the charges against the Defendant as follows:

> Q. What did she tell you before you turned on the tape recorder or the digital recorder or whatever -- whatever it was? Did she indicate anything else about this -- this -- with respect to any pressure that might have been put on her or suggestions made?
>
> A. I'm trying to think.
>
> Q. Did she ever indicate to you that Tish, W'tissue --
>
> A. Uh-huh (affirmative response).
>
> . . . .
>
> Q. Did she ever indicate to you that W'tissue or anyone else had told her what she needed to say to you?
>
> A. She indicated to me that she was receiving pressure from her family to let the case go, to drop the charges because it was tearing the family apart.
>
> Q. But not specifically what to say?
>
> A. Not at that time.
>
> Q. What do you mean by that?
>
> . . . .
>
> A. During the first particular incident, no. The second incident, around January 3rd, I believe this might be what you're referring to as whenever W'tissue actually for sure brought, that I know of, brought both [C.D and her mother], and instructed [C.D.] that day of what to actually put either into an affidavit, or if allowed to speak to do that with the DA's office, or whenever speak [sic] to the detective, what to say.

Detective Phillips continued to discuss the events as follows:

10

Q. Okay, I realize that you're paraphrasing, but that's -- but essentially Mr. Thacker was trying to get his wife to --

A. Correct, both times.

Q. -- get the charges dropped?

A. Correct.

Q. And so the second time you had a visit was January 3rd --

A. Yes, sir.

Q. -- or somewhere abouts [sic] ? And who came that time?

A. That time, again, [C.D. and her mother] that time, but [Wtissue] waited outside. She actually transported them that day for sure.

Q. Okay. Did you take a statement from anybody on that occasion?

A. I did. I did, from [] the mother.

Q. The mother. But you didn't take one from [C.D.]?

A. No, sir, it would have been redundant.

Q. Okay. And during that investigation you learned that W'tissue had actually told --

. . . .

A. [The mother] confessed that she had been approached by W'tissue and she actually spoke about the conversation that W'tissue had with [C.D.] in her vehicle, telling her what to say when she spoke with either the DA or a representative of or myself.

Q. So she was -- what was it she was supposed to say?

A. That it was a lie, it didn't happen.

Detective Phillips testified that: "whenever you bring everything in totality together is [sic] very easy to understand what was going on."

Detective Phillips was further questioned as follows:

Q. Okay. I mean, she's capable of -- of -- why do you think there was intimidation involved?

A. Through the use of him using the jail phones whenever he spoke to his wife of his intent to get her to drop them. And then when

11

she comes in and actually follows through with it and tells me it really did happen and I want to drop the charges.

Detective Phillips took a statement from N.D. He confirmed that her testimony was consistent with the statement she gave to him.

Chasta, the Defendant's daughter, was aware that her father had a conviction for a sexual offense. Chasta indicated that C.D. and N.D. were her cousins. Chasta testified that she and C.D. did not tell her mother the Defendant molested them. Chasta additionally testified that her father had never molested her. Chasta also testified that she was seen by a physician to determine whether her hymen was intact, and "[e]verything was normal." Chasta further testified that she never witnessed anything inappropriate between the Defendant and C.D., and neither C.D. nor N.D. told her that the Defendant acted inappropriately with them.

Chasta denied leaving the bathroom while the Defendant washed C.D.'s hair, and she did not recall C.D. ever being alone with the Defendant. Chasta subsequently agreed that it was possible that she left C.D. in the room with the Defendant while she went to get something.

Chasta testified that C.D. was banned from her home for pushing their grandmother down. As a result, C.D. was mad. Chasta indicated that, the day after C.D. was banned from her home, C.D. went to the residence and Chasta's brother told her to leave. As a result, C.D. stated, "'F' all of y'all, y'all can all burn down there." Chasta said the Defendant was arrested a week after the fight. Chasta never heard her mother threaten C.D. with respect to dropping the charges against the Defendant.

Donald Dyer, the Defendant's brother-in-law, testified that he did not witness the Defendant molest anyone, and he did not believe the allegations made by C.D. and N.D. were true. Dyer testified that he did not witness the fight C.D.

12

supposedly had with her grandmother; however, he, the grandmother, and C.D.'s mother and father discussed the matter with C.D. Dyer testified that C.D. did not like what the group said to her, so she threatened to press charges against the Defendant for sexual molestation. Dyer testified that C.D.'s claim that the Defendant molested Chasta was a lie, as Chasta loved her father.

Dyer claimed the wrong person was in jail. He based his conclusion on "the drugs or the sneaking out of the house to [C.D.'s] boyfriend's house all hours of the night." Dyer testified that C.D. threatened to have him arrested because he was going to "whip her butt" for hitting his mother. Finally, Dyer was aware the Defendant had pled guilty to carnal knowledge involving a babysitter who was thirteen or fourteen years old.

Betty Dean Gaspard, the Defendant's neighbor, grew up with C.D. and Chasta. Betty testified that Chasta never indicated that her father was molesting her. Betty was aware the Defendant was a sex offender, and her parents would not let her go to his residence. Betty did not feel uncomfortable or threatened when she was around the Defendant. Additionally, C.D. never told her the Defendant did anything inappropriate to her.

Betty was asked if she stated the following during an interview at the advocacy center: "I don't like it when she . . . leaves me in there by myself -- by myself with him casue [sic] people have told me that he's done stuff in the past and it makes me feel weird around him." Betty responded, "that's like around any man. Like, I just --I don't really like being alone with men." Betty then admitted she made the statement during the interview.

Thereafter, Betty testified that neither C.D. nor N.D. had ever said anything about the Defendant to her. Betty said that she did not remember telling the interviewer differently, i.e., that N.D. told her about feeling weird around the

13

Defendant because of the things that she, N.D., had heard. Further, Betty did not remember telling the interviewer that C.D. told her that the Defendant was always doing "stuff with her." Finally, Betty denied she told the interviewer that C.D. told her that the Defendant tried to touch her, C.D.'s, "boobs and stuff."

The Defendant was forty-four years old at the time of trial. The Defendant admitted that he had sex with his thirteen-year-old babysitter and pled guilty to carnal knowledge of a juvenile.[4] He spent six months in jail, was on supervised probation for five years, and had to register as a sex offender for fifteen years. The Defendant denied the allegations made by his nieces, C.D. and N.D. The Defendant agreed that he told the truth regarding the prior allegations once the detective told him there was a witness to his inappropriate acts.

The Defendant testified that he did not approve of the way C.D. conducted herself at times and of the language she used, so he did not want her around his children. The Defendant indicated that C.D. and N.D. knew he was a sex offender. The Defendant indicated that, when he found out who the supposed victims of the current charges were, he asked his wife to ask them "why they did it and to drop this nonsense." The Defendant was surprised that N.D. accused him of such behavior, as she seemed pleased with the things he and his wife had done for her.

In brief to this court, the Defendant contended "[t]he most obvious and glaring aspect of the prosecution's case is the utter absence of any physical or forensic evidence" to support N.D.'s allegations. The Defendant asserted that N.D. stated there were several incidents, but she did not remember them. Defendant asserted that if we were to believe N.D.'s allegation that she was sexually abused as early as six years old and the abuse continued for many years, "isn't the absence

---

[4]A joint stipulation indicated the Defendant pled guilty to this offense on October 7, 2002. (Joint Exhibit No. 1.)

14

of any forensic/medical evidence irreconcilable with the testimony?" The Defendant noted that no one observed him abuse N.D., and she never told anyone about the abuse because no one would believe her.

The Defendant contended that C.D.'s testimony was fraught with the same internal contradictions and inconsistencies as that of N.D. The Defendant noted that C.D. testified she told Chasta of the sexual abuse, and Chasta said she had been abused; however, Chasta denied C.D.'s claims. The Defendant notes that no one saw the Defendant abuse C.D. Additionally, C.D. told Detective Phillips she wanted to drop the charges. The Defendant contended that C.D. had a motive to lie, as she had been banned from his residence shortly before the allegations were reported to police.

The Defendant argued that it was internally inconsistent that a person subjected to repeated sexual assaults would return time after time to the residence of her attacker. The Defendant contended that the testimony of N.D. and C.D. was irreconcilable with the physical evidence, was internally inconsistent, and should have been rejected.

N.D. testified the Defendant licked her vagina, inserted his finger into her vagina, and tried to penetrate her while she was pregnant. It is clear that physical evidence of several of the claims made by N.D. would not be available because the offenses occurred many years prior to N.D. reporting them to police. Additionally, N.D. was clearly sexually active when the last offense occurred, as she was pregnant at that time. The only act committed against C.D. which might have left physical evidence at the time the offenses were reported to police was the Defendant's attempt to penetrate her on August 2, 2011. "However, Louisiana jurisprudence has consistently held that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even if there is no physical

evidence." *State v. Ware*, 11-337, p. 4 (La.App. 3 Cir. 11/23/11), 80 So.3d 593, 597, *writs denied*, 11-1391 (La. 3/9/12), 84 So.3d 549, and 12-46 (La. 8/22/12), 97 So.3d 358. Furthermore, the testimony of C.D. and N.D. may have conflicted with that of Chasta and the Defendant; however, there was no internal contradiction in the testimony of N.D., and the only contradiction in C.D.'s testimony dealt with the age she was when the Defendant raised her skirt in his kitchen.

The jury's verdicts indicate it chose to believe the testimony of N.D. and C.D. over that of the Defendant and his daughter Chasta. This court will not second-guess those credibility determinations. Accordingly, the claims raised by the Defendant in his first assignment of error lack merit.

Although not raised by the Defendant in his assigned error, we will consider the sufficiency of the evidence to support the Defendant's convictions for attempted aggravated rape and obstruction of justice. *See Thacker*, __ So.3d __.

The bill of information charged the Defendant with committing attempted aggravated rape upon a child under the age of twelve, a violation of La.R.S, 14:42(A)(4). In order to support a conviction of attempted aggravated rape, the State was required to prove beyond a reasonable doubt that the Defendant attempted to have oral, vaginal, or anal sexual intercourse with C.D. when she was under twelve years of age. *See* La.R.S. 14:42(A)(4).[5]

This court's prior opinion indicated there *may* have been insufficient evidence to support the Defendant's conviction for attempted aggravated rape. However, upon a thorough review of the record, we find that the evidence was, in fact, sufficient to support the Defendant's conviction.

Louisiana Revised Statutes 14:41 defines rape as follows:

_____

[5]Louisiana Revised Statutes 14:42(A)(4) provided that the victim be under the age of twelve until August 15, 2003, at which time the statute required the victim to be under the age of thirteen. *See* 2003 La. Acts No. 795, § 1.

A. Rape is the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent.

B. Emission is not necessary, and any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.

C. For purposes of this Subpart, "oral sexual intercourse" means the intentional engaging in any of the following acts with another person:

(1) The touching of the anus or genitals of the victim by the offender using the mouth or tongue of the offender.

(2) The touching of the anus or genitals of the offender by the victim using the mouth or tongue of the victim.

Louisiana Revised Statutes 14:42, in pertinent part, defines aggravated rape as follows:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

. . . .

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

During her interview at the advocacy center, C.D. stated that, when she was nine or ten years old, the Defendant licked the outside of her "nuny cat."

In *Lowe*, 999 So.2d at 203-04, this court stated:

Viewing the evidence in the light most favorable to the prosecution, we find that the evidence presented to the jury established that the Defendant kissed and/or licked the vaginas of K.S. and A.S., and each girl was under the age of thirteen at the time of the offenses. Louisiana Revised Statutes 14:41 requires penetration when the rape involves vaginal or anal intercourse. However, contrary to the Defendant's assertion, penetration is not required for oral sexual intercourse, which is what occurred in the instant case.

17

The indictment listed the date of the offense as occurring between January 1, 2003, and December 31, 2005. However, C.D. said she was nine to ten years old when the Defendant licked the outside of her "nuny cat," which means the offense occurred between June 26, 2005, and June 25, 2007. Louisiana Code of Criminal Procedure Article 468 provides, "The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense." Despite the discrepancies with the dates listed in the indictment, the evidence indicated that C.D. was under the age of thirteen at the time the Defendant licked her genitals, and the Defendant's acts met the requirements of La.R.S. 14:42. Accordingly, the evidence presented by the State was sufficient to prove the elements of attempted aggravated rape.

The Defendant was also convicted of obstruction of justice. Louisiana Revised Statutes 14:130.1 defines the offense as follows:

> A. The crime of obstruction of justice is any of the following when committed with the knowledge that such act has, reasonably may, or will affect an actual or potential present, past, or future criminal proceeding as hereinafter described:
>
> (1) Tampering with evidence with the specific intent of distorting the results of any criminal investigation or proceeding which may reasonably prove relevant to a criminal investigation or proceeding. Tampering with evidence shall include the intentional alteration, movement, removal, or addition of any object or substance either:
>
> > (a) At the location of any incident which the perpetrator knows or has good reason to believe will be the subject of any investigation by state, local, or United States law enforcement officers; or
> >
> > (b) At the location of storage, transfer, or place of review of any such evidence.
>
> (2) Using or threatening force toward the person or property of another with the specific intent to:
>
> > (a) Influence the testimony of any person in any criminal proceeding;

18

(b) Cause or induce the withholding of testimony or withholding of records, documents, or other objects from any criminal proceeding;

(c) Cause or induce the alteration, destruction, mutilation, or concealment of any object with the specific intent to impair the object's integrity or availability for use in any criminal proceeding;

(d) Evade legal process or the summoning of a person to appear as a witness or to produce a record, document, or other object in any criminal proceeding;

(e) Cause the hindrance, delay, or prevention of the communication to a peace officer, as defined in R.S. 14:30, of information relating to an arrest or potential arrest or relating to the commission or possible commission of a crime or parole or probation violation.

(3) Retaliating against any witness, victim, juror, judge, party, attorney, or informant by knowingly engaging in any conduct which results in bodily injury to or damage to the property of any such person or the communication of threats to do so with the specific intent to retaliate against any person for:

(a) The attendance as a witness, juror, judge, attorney, or a party to any criminal proceeding or for producing evidence or testimony for use or potential use in any criminal proceeding, or

(b) The giving of information, evidence, or any aid relating to the commission or possible commission of a parole or probation violation or any crime under the laws of any state or of the United States.

In the indictment, the State asserted the Defendant committed the offense by tampering with evidence. At trial, the State argued the Defendant obstructed justice by having his wife attempt to have C.D. drop the charges against him.

The Defendant was incarcerated at the time C.D. was "pressured" to drop the charges and did not speak directly to C.D. Thus, the Defendant would have to be a principal to Wtissue's acts in order to be found guilty of the offense at issue. "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in

19

its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La.R.S. 14:24.

Detective Phillips testified about phone calls the Defendant had with his wife, Wtissue. Detective Phillips said that during the first call, "it appeared that [Wtissue] started things off by herself." Later, Wtissue told C.D. what to say in an affidavit. Detective Phillips testified that C.D. never specifically said who pressured her to drop the charges. However, C.D. testified that Wtissue asked other family members to talk to her about dropping the charges.

Given the above, we find that there was no evidence that the Defendant told Wtissue to use or threaten force to influence C.D. to drop the charges or even that Wtissue used or threatened force to influence C.D. Accordingly, the State failed to prove that the Defendant committed the offense of obstruction of justice beyond a reasonable doubt. As such, we will consider whether a lesser offense was proven.

> Under La.Code Crim.P. art. 821(C), "an appellate court that finds 'the evidence, viewed in a light most favorable to the state, supports only a conviction of a lesser included responsive offense . . . may modify the verdict and render a judgment of conviction on the lesser included responsive offense.' " *State v. Teague*, 04–1132, p. 9 (La.App. 3 Cir. 2/2/05), 893 So.2d 198, 205. We must, therefore, determine whether any responsive offense was proven.

*State v. Willis*, 05-218, p. 13 (La.App. 3 Cir. 11/2/05), 915 So.2d 365, 377, *writ denied*, 06-186 (La. 6/23/06), 930 So.2d 973, *cert. denied*, 549 U.S. 1052, 127 S.Ct. 668 (2006).

> There are no statutory responsive verdicts provided in Article 814 for obstruction of justice, and the matter is therefore controlled by La. C. Cr. P. art. 815, which provides:
>
>> In all cases not provided for in Article 814, the following verdicts are responsive:
>>
>> (1) Guilty;

20

> (2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense is a misdemeanor; or
>
> (3) Not guilty.
>
> Our law on responsive verdicts in jury trials is clear.
>
> Attempted obstruction of justice is a proper responsive verdict to a bill of information charging obstruction of justice. *State v. Butler*, 41,985 (La.App. 2d Cir.6/20/07), 960 So.2d 1208.

*State v. Newton*, 42,743, pp. 3-4 (La.App. 2 Cir. 12/19/07), 973 So.2d 916, 919, *writ denied*, 08-1147 (La. 1/16/09), 998 So.2d 90 (footnote omitted).

Louisiana Revised Statutes 14:27 defines attempt, in pertinent part, as follows:

> A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
>
> B. (1) Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.

Given the above, the State also failed to prove the Defendant had the specific intent to use force or threats to influence C.D. Accordingly, the Defendant's conviction and sentence for obstruction of justice are vacated.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, the Defendant contends the trial court imposed an excessive sentence tantamount to a life sentence. We find no error in the Defendant's remaining sentence.

The Defendant's sentence for the aggravated incest conviction was vacated due to an error patent, and the Defendant's conviction and sentence for obstruction

21

of justice were vacated. The remaining sentences are the Defendant's fifty-year

sentence for attempted aggravated rape and his fifty-year hard-labor sentences for

each of two counts of sexual battery. The trial court ordered all sentences to be

served concurrently.

The law is well settled concerning the standard to be used in reviewing

excessive sentence claims:

> La. Const. art. I, § 20 guarantees that, "[n]o law shall subject
> any person to cruel or unusual punishment." To constitute an
> excessive sentence, the reviewing court must find the penalty so
> grossly disproportionate to the severity of the crime as to shock our
> sense of justice or that the sentence makes no measurable contribution
> to acceptable penal goals and is, therefore, nothing more than a
> needless imposition of pain and suffering. *State v. Campbell*, 404
> So.2d 1205 (La.1981). The trial court has wide discretion in the
> imposition of sentence within the statutory limits and such sentence
> shall not be set aside as excessive absent a manifest abuse of
> discretion. *State v. Etienne*, 99–192 (La.App. 3 Cir. 10/13/99); 746
> So.2d 124, *writ denied*, 00–0165 (La.6/30/00); 765 So.2d 1067. The
> relevant question is whether the trial court abused its broad sentencing
> discretion, not whether another sentence might have been more
> appropriate. *State v. Cook*, 95–2784 (La.5/31/96); 674 So.2d 957, *cert.
> denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, 00-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d

1035, 1042-43, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331.

Even when a sentence falls within the statutory sentencing range, it still may

be unconstitutionally excessive. In determining whether a sentence shocks the

sense of justice or makes no meaningful contribution to acceptable penal goals, this

court has suggested that several factors may be considered:

> [A]n appellate court may consider several factors including the nature
> of the offense, the circumstances of the offender, the legislative
> purpose behind the punishment and a comparison of the sentences
> imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00); 766
> So.2d 501. While a comparison of sentences imposed for similar
> crimes may provide some insight, "it is well settled that sentences
> must be individualized to the particular offender and to the particular
> offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1
> Cir.1991). Additionally, it is within the purview of the trial court to
> particularize the sentence because the trial judge "remains in the best

position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061.

Prior to imposition of the Defendant's sentences, the trial court questioned the Defendant, who indicated he was forty-four years old; his date of birth was February 12, 1968; he had graduated from high school; he had worked in construction and as a truck driver; he had been unemployed for a couple of years; he was married; he had four children, ages eighteen, seventeen, fifteen, and five; he had not been in the military; and he did not have a substance abuse problem.

The State informed the trial court that the Defendant had a prior conviction for carnal knowledge of a juvenile. The trial court then stated:

> [Under Louisiana Code of Criminal Procedure Article] 894.1, the aggravating factors are -- well, I'll say under paragraph [A], if it's an undue risk during the period of a suspended sentence or on probation that he will commit a crime, I believe that he's in need probational treatment or a custodial environment that can be provided most effectively by his commitment to an institution, and I believe that a lesser sentence would deprecate the seriousness of his crime.
>
> I believe that B(2) is an aggravating factor in that the victim was particularly vulnerable and incapable because of extreme youth. I believe that he used his position of status to facilitate the commission of the offense. That's number 4.
>
> . . . .
>
> . . . The mitigating factors, well that would be -- just reverse those.
>
> I find that his conduct caused a serious harm to these children. We know most females that are sexually abused, most of them have substance abuse problems; most of them have problems with relationships with men; most of them have multiple divorces, is what -- that's a few of the causes of sex abuse amongst females.
>
> I find that his conduct caused serious harm and that he contemplated that. He did not act under strong provocation. There were not grounds to excuse or justify his criminal conduct. I do not

23

believe that the victims induced or facilitated his commission. I do not have any information that he could compensate the victims for his criminal conduct. He does have a history of prior criminal activity, which was carnal knowledge of a juvenile over a long period of time involving a babysitter.

I find that his conduct is the result of circumstances that will likely recur if he does not receive this sentence. I do not find that he would respond affirmatively to probation treatment because he was on probation before and he did not respond to that.

The trial court then found that the children's dependence on the Defendant as a father was a mitigating factor and continued:

I find another factor for the Court to consider is that he's not admitted his blame or expressed any remorse. He was not under a serious emotional strain at the time of the events.

Okay, the factors that I consider are rehabilitation. I do not find that the defendant is subject to rehabilitation. This is an ongoing problem with him and I do not know if he could respond to that.

I need to consider general deterrence, and I believe that the community needs to know that this type of activity is serious. It is to be considered by the -- serious by the District Attorney's Office because they prosecuted him for eleven (11) counts and the sentence needs to reflect that the Court considers it serious so that it will create general deterrence in the community. . . . In punishment, I need to give him some type of sentence to specifically deter him from future -- from future criminal conduct such as this.

Attempted aggravated rape is punishable by a term of imprisonment of ten to fifty years at hard labor, and the Defendant was sentenced to the maximum term of incarceration. *See* La.R.S. 14:42; La.R.S. 14:27. "Maximum sentences are reserved for the most serious violations and the worst offenders.". *State v. Farhood*, 02-490, p. 11 (La.App. 5 Cir. 3/25/03), 844 So.2d 217, 225.

The trial court did consider the circumstances of the Defendant at the time the sentence was imposed and discussed several aggravating and mitigating factors that were present. In *State v. York*, 48,230 (La.App. 2 Cir. 8/7/13), 121 So.3d 1226, *writ denied*, 13-2154 (La. 3/21/14), 135 So.3d 617, the defendant was convicted of attempted aggravated rape. The victim, who was mentally

24

handicapped, testified that the defendant licked and kissed her vagina. The defendant was sentenced to serve fifty years at hard labor without benefits for the offense. On appeal, the defendant alleged his sentence was excessive. When addressing the issue, the second circuit stated:

> As for the maximum sentence for attempted aggravated rape of the sister-in-law, the trial court made reference to the article 894.1 factors, noting that the defendant should have known the victim was particularly vulnerable or incapable of resistance, and that the defendant used his position and status to facilitate the commission of the offense. Then the court said, "You know, without me going into a diatribe about the insidious nature of this or of these offenses . . . this court hereby sentences you to 50 years at hard labor without benefit of probation, parole, or suspension of sentence. . . ." .

> Considering the factors articulated by the court, and considering that a strong argument can be made that there was more than enough evidence to convict the defendant for aggravated rape of Y.P., the court's sentence on the attempted aggravated rape does not shock the sense of justice. We find no abuse of discretion in sentencing.

*Id.* at 1241-42.

Due to the sordid nature of the offense, the decision in *York*, and the fact that the Defendant in the case at bar has a prior felony conviction for carnal knowledge of a juvenile, this court cannot say the trial court abused its discretion in imposing the maximum sentence for his attempted aggravated rape conviction.

Next, we will address the Defendant's sentences for sexual battery. Initially during the sentencing proceeding, the trial court stated the sentencing range for sexual battery was up to ten years. The prosecutor then stated, "There's some different ranges on that depending on the age of the victim and also the effective date. The effective date of the amendments, I believe was 2006, making it twenty-five (25) to ninety-nine (99)."[6] Thereafter, the trial court stated, "All right, so sexual battery is twenty-five (25) to ninety-nine (99). . . ." On each of the sexual

---

[6]The 2006 amendment to the sexual batter statute, La.R.S. 14:43.1, added the range of twenty-five years to life when the victim was under the age of thirteen. In 2008, life was changed to ninety-nine years.

battery convictions, the trial court sentenced the Defendant to fifty years at hard labor without the benefit of probation, parole, or suspension of sentence.

In *State v. Sugasti,* 01-3407, p. 4 (La. 6/21/02), 820 So.2d 518, 520, the supreme court held, in pertinent part:

> This court has consistently held that the law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. *State v. Wright*, 384 So.2d 399, 401 (La.1980). A defendant must be sentenced according to sentencing provisions in effect at the time of the commission of the offense. *State v. Narcisse*, 426 So.2d 118, 130-131 (La.1983).

According to the charging instrument, the Defendant committed count one of aggravated rape between January 2003 and December 2005 and count two of aggravated rape between January 1999 and December 2002, and C.D. was listed as the victim on each count. The jury found the Defendant guilty of the responsive verdict of sexual battery on each count.

One of the incidents that C.D. testified to that fits the definition of sexual battery occurred when she was six years old. C.D. testified her date of birth was June 26, 1996. Given C.D.'s date of birth, that incident would have occurred sometime between June 2002 and June 2003. If this incident is used for one of the sexual battery convictions, the sentencing range in effect at that time was not more than ten years with or without hard labor without the benefit of parole, probation, or suspension of sentence.

There are several other incidents that C.D. testified to that fit the definition of sexual battery; however, two of the incidents, as discussed below, may have occurred outside the date ranges specified in the charging instrument for the sexual battery counts, and several of the incidents definitely occurred outside the date ranges specified in the charging instrument for the sexual battery counts.

Additionally, with respect to two of the incidents, it is unclear whether the 2006 amendment to La.R.S. 14:43.1 applies. As noted in the sufficiency review, C.D. testified that she was "maybe about 10" when the Defendant put her hand down his pants, and with respect to a separate incident, she testified that she was "around ten" when the Defendant put her hand down his pants. C.D. turned ten on June 26, 2006. The effective date of the 2006 amendment to La.R.S. 14:31.1, which added the penalty range of twenty-five to life when the victim is under the age of thirteen, was August 15, 2006, approximately a month and a half after C.D. turned ten. Therefore, C.D.'s testimony that she was "maybe about 10" for one incident and "around 10" for the other incident does not pinpoint the time of the offenses and could mean the incidents occurred sometime before or after her tenth birthday. Therefore, it is unclear whether the two incidents just discussed occurred prior to or after the 2006 amendment to La.R.S. 14:43.1. Since the dates of these two incidents cannot be determined, the legality and excessiveness of the sentence on one of the counts of sexual battery cannot be determined if one of the above-referenced incidents was the basis of one of the sexual battery convictions. There were three other incidents C.D. testified to that fit the definition of sexual battery, and based on her testimony regarding her age at the time of the incidents, the incidents clearly occurred after the effective date of the 2006 amendment to La.R.S. 14:43.1. Therefore, if any one of these three other incidents was the basis for one of the sexual battery convictions, the 2006 amendment to La.R.S. 14:43.1 would apply to that conviction.

Louisiana Code of Criminal Procedure Article 872 provides, "A valid sentence must rest upon a valid and sufficient . . . [v]erdict, judgment, or plea of guilty." In *State ex rel. Simpkins v. State*, 12-1599 (La. 12/14/12), 102 So.3d 776,

the trial court sentenced the relator to ten years for a molestation conviction.  In

reviewing the relator's claims, the supreme court stated:

> In reviewing the sufficiency of the evidence on direct appeal, the court
> of appeal determined, sua sponte, that relator's 10-year sentence for
> molestation was illegally lenient under R.S. 14:81.2, as amended in
> 2006 to increase the penalty for a person who commits the crime of
> molestation of a juvenile when the victim is under the age of 13 years
> from one to 10 years imprisonment to 25 years to life imprisonment at
> hard labor.  Specifically, the court of appeal made a factual
> determination that relator must have molested the victim during a
> five-month window between the effective date of the amendment and
> the victim's 13th birthday.

*Id.* at 776.  The supreme court further stated,

> the state concedes that relator is correct his sentence is illegal because
> the penalty, far in excess of the maximum 10-year sentence he
> initially received under the law as it read before the 2006 amendment,
> "is based on facts not found by the jury at trial, but assumed by the
> court of appeal when it order [sic] him resentenced."

*Id.* at 777.  The supreme court vacated relator's life sentence for molestation of a

juvenile under the age of thirteen and reinstated the original sentence of ten years.

In view of *Simpkins*, it is improper for this court to assume which conduct supports

which convictions or to assume the dates the offenses were committed when the

victim's testimony did not pinpoint the commission dates.

Summarizing, because the record does not establish which conduct supports

which conviction and because the legality and excessiveness of at least one of the

two sexual battery convictions cannot be determined, we vacate the two sexual

battery sentences and remand the matter to the trial court for resentencing in

accordance with the applicable penalty in effect at the time of the commission of

the offenses and order the trial court to clarify the reasons for the sentences

imposed on both sexual battery convictions.

In conclusion, the Defendant's sentence for attempted aggravated rape is affirmed and his sentences for sexual battery are vacated and the matter remanded for resentencing in accordance with this court's opinion.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE:

In his first pro se assignment of error, the Defendant contends the trial court clearly violated his fundamental right to due process of law by refusing exculpatory evidence, which would clearly undermine the verdict and would tend to show the victim lied under oath.

The Defendant contends the trial court abused its discretion when it "refused to allow defense counsel's witness to testify, and who's [sic] testimony attest's [sic] that prior to the alleged offense, several reliable persons heard the alleged victim make a threat that she would falsely accuse the defendant of sexual misconduct with her." The Defendant fails to reference a ruling by the trial court denying any witness the right to testify, to set forth the name of the witness to which he is referring, or to reference anything in the record that sets forth the basis for his claim. For these reasons, this court will not consider the Defendant's assignment of error. *See State v. Lewis*, 09-846 (La.App. 3 Cir. 4/7/10), 33 So.3d 1046, *writ denied*, 10-967 (La. 11/24/10), 50 So.3d 825; Uniform Rules—Courts of Appeal, Rule 2-12.4.

## PRO SE ASSIGNMENT OF ERROR NUMBER TWO:

In his second pro se assignment of error, the Defendant contends it is "plain error on the patent of the face of the record" where the charging instrument charges multiple counts of the same distinct offense which clearly violates his rights against cumulative and successive punishments under U.S.Const.amend. V and La.Const.art. 1 § 15.

The Defendant asserts the following:

29

A provision in a penal statute that any person "who violatyes [sic] or fails to comply with an of" it's [sic] requirements shall be punished as there specified is not construable as imposing a single punishment for the violation by a single act, of separate requirements, and the penal section of these statutes does not authorize, cumulative and successive punishments. Wherefore the trial court violated Petitioner's constitutional right's [sic], and statutory right's [sic] against Double Jeopardy.

"The constitutional protections against double jeopardy prevent a second prosecution for the same offense after an acquittal or conviction, and prevent multiple punishments for the same offense." *State v. Grace*, 10-1222, p. 14 (La.App. 3 Cir. 4/6/11), 61 So.3d 812, 823, *writ denied*, 11-961 (La. 10/21/11), 73 So.3d 382. The Defendant fails to set forth which of his convictions are for the same offense or for which offense he received multiple punishments. For these reasons, we find that this assignment of error lacks merit.

**DECREE:**

In light of the supreme court's opinion, the resentencing held on March 17, 2014, is null.

The Defendant's conviction and sentence for obstruction of justice is vacated. The Defendant's remaining convictions and his sentence for attempted aggravated rape is affirmed. However, the fifty-year sentences imposed on each count of sexual battery is vacated and the matter remanded to the trial court for resentencing in accordance with this opinion. Additionally, the single sentence imposed on the aggravated incest convictions is vacated and the matter remanded to the trial court for a legal sentence to be imposed on each count of aggravated incest in accordance with this opinion.

**AFFIRMED, IN PART;**
**VACATED, IN PART;**
**VACATED AND REMANDED.**

30